COMMONWEALTH *vs.* NADIA TENNISON
(and two companion cases[1]).

Suffolk. October 8, 2003. - December 12, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Jury and jurors, Mistrial, Assistance of counsel, New trial. *Evidence,* Prior consistent statement. *Jury and Jurors. Firearms. Assault and Battery.*

A criminal defendant was not entitled to a new trial based on the trial judge's failure to order an immediate mistrial as soon as a codefendant's counsel made an accusation of jury contamination, or after removing the allegedly tainted juror, where the judge, following the procedures set forth in *Commonwealth* v. *Jackson,* 376 Mass. 790 (1978), conducted an individual voir dire of the jury and instructed them to disregard their earlier deliberations, and where the lack of a second voir dire after removal of the juror did not create a substantial risk of a miscarriage of justice in that every juror denied being exposed to extraneous information [557-560]; moreover, the judge did not err in declining to declare a mistrial as to one of the charges on the ground that the original jury delivered to the court a sealed verdict on that charge prior to the jury contamination allegation, where the judge concluded upon voir dire that the remaining jurors could, in accordance with his instructions, decide the entire case anew, free of any influence the removed juror may have had on the initial deliberations, and where the verdict was not yet valid [560-561].

A criminal defendant was not entitled to a new trial on the basis of ineffective assistance of counsel, despite the fact that a conflict of interest, which arose for defendant's counsel during proceedings addressed at remedying the damage caused by the defendant having contacted one of the jurors sitting at his trial, could not be remedied instantly, where the defendant was represented zealously by counsel at all times, and where replacement counsel arrived within a relatively short amount of time after his original counsel's withdrawal. [561-562]

A victim's entire statement to police, which in most circumstances would have been inadmissible at a criminal trial as a prior statement consistent with the victim's trial testimony, was nevertheless admissible under the doctrine of verbal completeness, where the full statement helped to explain and put into context the victim's testimony, and where there was no prejudice from the admission of the full statement. [562-564]

Eyewitness testimony at a criminal trial on an indictment for possession of a firearm with a barrel less than sixteen inches as defined by G. L. c. 140,

[1]Against David Young.

§ 121, in addition to testimony regarding the type of bullets recovered from the scene, constituted sufficient evidence to warrant the conclusion that the weapon the defendant used fell into the proscribed category. [564-565]

A Superior Court judge did not abuse his discretion in denying a motion for a new trial, where the jury could properly decide to credit the victim's testimony, where the jury were instructed to determine the guilt of each defendant separately, where the fact that jurors remained after the removal of a tainted juror did not prejudice the defendant, and where any possible inconsistency in the verdicts and the defendant's lack of a criminal record did not warrant a new trial. [565-567]

INDICTMENTS found and returned in the Superior Court Department on December 22, 1998.

The cases were heard by *John C. Cratsley,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kajal K. Chattopadhyay,* Assistant District Attorney, for the Commonwealth.

*Geraldine C. Griffin* for Nadia Tennison.

*Daniel J. Bennett* for David Young.

COWIN, J. Indictments against the defendants arose from accusations that they had attacked Cynthia Hunter, the victim, several hours after a fight between Hunter and the defendant Nadia Tennison at a local bar. A Superior Court jury convicted Tennison of assault and battery, and the defendant David Young of unlawful possession of both ammunition and a firearm with a barrel of sixteen inches or less. The jury acquitted the two defendants of other charges.[2] Both defendants appealed, claiming that the trial judge erred by mishandling a possible instance of jury contamination, and by admitting a statement of the victim as a prior consistent statement. Young also contended that the evidence was insufficient to convict him of the firearm charge and Tennison appealed from the denial of her motion for a new trial. The Appeals Court concluded in an unpublished memorandum and order pursuant to its rule 1:28 that the judge had not handled the jury contamination issue properly and

[2]Tennison and Young each had been charged with assault by means of a dangerous weapon. Young also had been charged with assault and battery and making threats.

reversed the judgments as to both defendants. *Commonwealth* v. *Tennison,* 57 Mass. App. Ct. 1108 (2003).[3] We granted the Commonwealth's application for further appellate review and affirm the convictions.

1. *The jury contamination claim.* Tennison's primary claim is that she is entitled to a new trial because of the way in which the judge dealt with an accusation of jury contamination. We set forth the facts concerning this issue. After the jury had begun deliberations, Young's counsel (counsel) moved to withdraw.[4] This motion was based on the fact that during a weekend recess, counsel became aware that his client had been in contact with one of the jurors from the outset of the trial. Indeed, counsel believed that the "taint ha[d] become pervasive through the jury." Because counsel might be required to testify against Young, he was concerned that this potential conflict of interest required his withdrawal. After consulting with bar counsel, he refused to reveal the name of the allegedly tainted juror or any further details, the information having been obtained in a privileged communication with his client.

At this point, the judge conducted an individual voir dire of the jurors, informing each of his concern that one of them may have violated his previous instructions by being in contact with, or knowing someone, involved in the case. The judge asked each juror the following questions:

> (1) "Were you entirely truthful when you said you didn't know anyone involved in the case?" (2) "Have you contacted, or been contacted by, anyone involved in the case?" (3) "Have you heard any conversations in the jury room that would suggest that some juror may know or be in contact with anyone involved in the case?"[5]

---

[3]In its memorandum, the court further determined that the judge acted within his discretion in admitting the victim's prior consistent statement and that the other appellate issues "lack[ed] merit."

[4]The judge did not act on counsel's motion until he had resolved the jury contamination issue.

[5]The phrasing of the questions was not identical with each juror, but each interview was substantially the same in all respects relevant to our decision. We paraphrase the questions here. However, we note that after review of the transcript, we find that during no juror interview were the defendants singled

Each juror responded in turn that he or she and, as far as they knew, all the other jurors had not been in contact with and did not know anyone involved in the case.

The judge then ordered counsel, who by now had consulted with his own counsel, to reveal the name of the allegedly tainted juror. At this time, counsel moved for a mistrial, on the ground that removing any single juror would raise a negative inference that one or both of the defendants had been involved in "something untoward." The judge denied this request, and, at the judge's further insistence, counsel finally revealed the name of the juror in question.[6] This juror (juror no. 5-6) was confronted with the accusation, but the judge took care to avoid asking her to respond or provide additional information. Neither defendant requested any further voir dire of the jury. After excusing juror no. 5-6, the judge appointed an alternate.[7] He informed the "new" jury that juror no. 5-6 had been discharged for personal reasons, and instructed them that they were not to speculate on the reasons for the discharge. He told them to put aside what had been said during earlier deliberations, and to begin deliberations anew on all seven indictments. The sealed verdict which had previously been returned on Tennison's assault and battery charge was nullified. The judge then allowed counsel's motion to withdraw and appointed successor counsel for Young for the remainder of the case. The jury returned their verdicts on the following day.[8]

The defendants claim that the judge erred in three respects in

out as those responsible for the judge's concerns. The judge was careful to use neutral phrases such as "anyone involved in the case."

[6]Counsel revealed this information so as not to be found in contempt and "to preserve the integrity of the court." He provided the name of the juror in question to the court in a sealed envelope. Counsel did not reveal any further details of his conversation with his client.

[7]Tennison's attorney initially resisted the removal of the juror, arguing that the hearsay allegation of misconduct (counsel's repetition of his client's assertion) was insufficient to establish that any contamination of the jury had occurred. Once juror no. 5-6 was removed, however, Tennison's attorney joined in counsel's concerns that the jury had been prejudiced irreparably because they would assume that it was one or both of the defendants who had been in contact with juror no. 5-6.

[8]Prior to delivering their final verdicts, the new jury had delivered a single sealed verdict. (The sealed verdict was later determined to be for Tennison's assault and battery charge, see note 11, *infra*). The jury were deadlocked on

handling this difficult situation. First, Tennison argues that a mistrial on all seven indictments should have been ordered immediately following counsel's revelations, or, at least, after the judge failed to conduct more extensive questioning of all the jurors to determine the extent of the alleged contamination. Second, Tennison urges that a mistrial should have been declared on at least the one indictment that had already been sealed by the time juror no. 5-6 was dismissed. Finally, Young claims that he was denied assistance of counsel from the time his counsel moved to withdraw until the judge's appointment of successor counsel. We discuss each of these issues in turn.

Tennison contends that, as soon as counsel revealed his belief that his client had been in contact with a juror, there was a "manifest necessity" for a mistrial because the rest of the jury might have been tainted (the jurors had already been together for one week during the trial and one and one-half days of deliberations). Tennison further argues that a mistrial was necessary once juror no. 5-6 was removed following the voir dire, because the other jurors would have assumed that she had been in contact with a party and would have inferred from her statements during the nullified deliberations that it was one of the defendants. This inference, the argument goes, severely prejudiced both defendants.

In *Commonwealth* v. *Jackson*, 376 Mass. 790, 800 (1978), this court set forth procedures for courts to follow when a claim of extraneous influence on the jury is brought to the attention of a trial judge. The judge should first "determine whether the material . . . raises a serious question of possible prejudice." *Id.* If the judge so determines, he or she should conduct a voir dire examination of the jurors. *Id.* This initial voir dire may be conducted collectively, but if, in fact, a juror indicates exposure to the extraneous material in question, an individual voir dire is required to determine the extent of that exposure and its prejudicial effect. *Id.* See *Commonwealth* v. *Koumaris, ante*

the remaining charges, and were given a *Tuey-Rodriquez* charge. See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix A). The initial jury had received a *Tuey-Rodriquez* charge prior to the discharge of juror no. 5-6; thus, eleven of the jurors received the charge twice. At the jury's request, the judge allowed them to reconsider this sealed verdict.

405, 412 (2003); *Commonwealth* v. *Francis*, 432 Mass. 353, 369-370 (2000). The trial judge has discretion in addressing these issues, and we must give deference to his conclusions. *Id.* See *Commonwealth* v. *Koumaris*, *supra* at 412; *Commonwealth* v. *Federici*, 427 Mass. 740, 747 (1998); *Commonwealth* v. *Trapp*, 423 Mass. 356, 363, cert. denied, 519 U.S. 1045 (1996); *Commonwealth* v. *Kamara*, 422 Mass. 614, 616 (1996).

In this case, there was no need for the judge to order an immediate mistrial when he learned of counsel's allegations, or after he removed juror no. 5-6. The judge first determined that there was a serious question of possible prejudice, and then conducted an individual voir dire of the jury. The questions during voir dire were neutral and did not mention or imply any wrongdoing on the part of the defendants.[9] Every member of the jury denied exposure to extraneous material or influence. Once juror no. 5-6 was removed, the judge clearly instructed the new jury to refrain from speculating on the reasons for her removal and to disregard the earlier deliberations. The jury are presumed to follow the judge's instructions. *Commonwealth* v. *Degro*, 432 Mass. 319, 328 (2000). In some circumstances, a judge has discretion to declare that there is "manifest necessity" for a mistrial because "the ends of justice cannot be attained without discontinuing the trial." *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 55 (1984). Here, however, the judge properly safeguarded the defendants' rights by following the procedures set forth in the *Jackson* case, and there was no "manifest necessity" for a mistrial.

Tennison, however, maintains that the *Jackson* procedure was not properly followed, because juror no. 5-6 was not pressed for more information, and because the judge did not conduct a second voir dire to determine the extent of jury contamination after juror no. 5-6 was removed. Neither party requested a second voir dire at trial, so Tennison must demonstrate a

---

[9]The phrasing of the questions did not suggest any improper contact by anyone, as the judge had probed — with equal emphasis — whether each juror had been accurate in stating that he or she did not "know" anyone involved in the case. Prior to the voir dire, counsel for Tennison had requested that the questioning be conducted in a neutral manner and, during the voir dire itself, never objected to the judge's phrasing of the questions.

"substantial risk of a miscarriage of justice." See *Commonwealth* v. *Jackson, supra* at 797.

Tennison cites *Commonwealth* v. *Kamara, supra* at 615-616, in support of her position that there should have been a second voir dire. In that case, one juror discussed facts extraneous to the trial evidence with the rest of the jury. *Id.* at 617. After questioning this juror and discovering what she had said, the judge conducted individual questioning of the other jurors, who all admitted to hearing the extraneous information to some degree. *Id.* The judge then removed the offending juror, appointed an alternate and, having determined that the remaining jurors could still decide the case exclusively on the evidence, instructed the new jury to begin deliberations. *Id.* at 618. Tennison argues that, in her case, the judge should have followed this same procedure.

However, in this case, unlike the *Kamara* case, all the jurors denied being exposed to extraneous information. If juror no. 5-6 was lying, there was a legitimate concern that she not be compelled to disclose her perjury before seeking legal advice, and the judge acted properly in simply removing her and refraining from asking her further questions. He informed her that serious allegations had been made, that he was forwarding the accusation to the district attorney, and that she should seek legal assistance.[10] Having removed the juror whom he believed may have been contaminated, there was no point in the judge's pressing the remaining jurors on a second voir dire with questions that would be identical to the questions they had just answered on the first voir dire earlier that same day. Following counsel's revelations, the judge could be satisfied, based on the individual voir dire, that the remaining jurors were not prejudiced, and he could rely on their earlier statements that they had not been exposed to extraneous information. *Commonwealth* v. *Palmariello*, 392 Mass. 126, 141-142 (1984).

The facts of this case present a conflict between two important

[10]Given the judge's belief that juror no. 5-6 may have committed perjury or even jury tampering, he properly decided not to question her without the presence of an attorney, who most likely would have counseled her to invoke her privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

objectives. The defendant is entitled to a fair trial before an impartial jury. See *Commonwealth* v. *Vann Long*, 419 Mass. 798, 802 (1995), and cases cited. But we also cannot permit valid legal procedures to be frustrated by accusations, which are easily made and may well be false and predicated on a desire to disrupt those proceedings. Such conflicts cannot be resolved with precision. That being the case, we defer to the appraisal by the trial judge who is in the best position to observe and assess the demeanor of the jurors on voir dire. *Commonwealth* v. *Francis, supra* at 369. The determination that each juror was unaffected by extraneous information is within the sound discretion of the trial judge. See *Commonwealth* v. *Kamara, supra* at 620. In our view, the judge in this case handled the situation exactly as he should have and his judgment is entitled to deference.

Tennison's next assignment of error in regard to the jury contamination issue concerns the sealed verdict on the assault and battery charge. She claims that, because the original jury delivered to the court a sealed verdict on that charge prior to counsel's revelations, the judge should have at least declared a mistrial as to that single charge.[11] Tennison cites *Commonwealth* v. *McCarthy*, 37 Mass. App. Ct. 113 (1994), to support her proposition. In that case, a juror became ill and was replaced with an alternate during the deliberations. *Id.* at 118. The Appeals Court concluded that the trial judge did not err by permitting a verdict already returned by the initial jury to stand, and by instructing the newly constituted jury to deliberate only on the remaining charges. *Id.* at 118-119. Tennison argues that the judge here should have followed the *McCarthy* procedure and not sent the assault and battery charge to the newly constituted jury. However, Tennison contends, he also should have departed from the *McCarthy* case by declaring a mistrial on that single indictment, because it was the product of a contaminated jury.

The judge did not err in directing the new jury to deliberate

---

[11]The jury's first sealed verdict, delivered by the original jury before counsel moved to withdraw, found Tennison not guilty of assault and battery. This verdict was not read in open court, but, when it was nullified, the judge marked it as an exhibit. After Tennison was sentenced, but before Young was sentenced, the judge opened and read this verdict on the record. A sealed verdict that is later nullified is of no effect and should be destroyed without being opened.

anew on the entire case. Unlike the *McCarthy* case where a juror was merely ill, the judge here had reason to believe that this initial verdict may have been the product of contaminated deliberations. Even though the judge nullified this verdict, he properly could conclude, based on the individual voir dire, that the remaining jurors had not participated in any improper conduct and, by instructing the new jury to decide the entire case anew, he eliminated any influence juror no. 5-6 may have had on the initial deliberations. Further, the initial verdict on the assault and battery charge was sealed but not yet valid because it was not given and affirmed orally by the jurors in open court. See *Commonwealth* v. *Martell*, 407 Mass. 288, 292 (1990); *A Juvenile* v. *Commonwealth*, *supra* at 56; *Commonwealth* v. *Tobin*, 125 Mass. 203, 207 (1878). See also *A Juvenile* v. *Commonwealth*, *supra*, quoting *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831) ("The only verdict which can be received and regarded, as a complete and valid verdict of a jury . . . is an open and public verdict, given in and assented to, in open court, as the unanimous act of the jury, and affirmed and entered of record . . . ." ).

Finally, Young maintains that he was denied the assistance of counsel during a critical stage of the trial, the proceedings that resulted in the discharge of juror no. 5-6. From the time his counsel first moved to withdraw, Young insists, counsel's loyalties were divided. Furthermore, counsel was represented by an attorney by the time he revealed which juror had been contacted, whereas Young himself did not have the benefit of replacement counsel until after the "new" jury started deliberations.

There may have been a brief period during the proceedings when Young's counsel was placed in a conflicted position. But it was the defendant who contacted, or claimed to have contacted, a juror. It was the defendant who created a dilemma for his attorney and for the court by his own actions, and his attorney's conflict of interest arose during proceedings addressed at remedying the damage caused by those actions. He cannot now complain that the conflict of interest he created deprived him of a fair trial, merely because that conflict could not be remedied instantly. In this case, Young was represented zeal-

ously by counsel at all times despite the difficulty of the situation, and replacement counsel arrived within a relatively short amount of time. Young is not entitled to a new trial on this basis.

2. *Cynthia Hunter's prior consistent statement.* Both defendants claim that the judge erred in ruling that portions of a statement that Cynthia Hunter made to Officer John Cronin were admissible as a prior consistent statement.[12] To consider this claim, we set forth the relevant portions of Hunter's testimony. On the night of August 2, 1998, Cynthia Hunter went to the Skycap Lounge in the Roxbury section of Boston. While there, Hunter was involved in an argument and physical confrontation with Tennison, who was at the bar with Young. Hunter left the bar shortly thereafter and, along with several other people, went to the apartment of a friend on Norfolk Street. About fifteen to twenty minutes later, while Hunter was standing outside the building smoking a cigarette near her sister's automobile, the two defendants drove up. They got out of their car, Young holding a gun. Tennison approached Hunter and said, "Talk that shit now, bitch," and pushed her. Young threatened Hunter, grabbed and ripped her shirt, and fired several shots at Hunter's sister's car. The defendants returned to their car and drove off. Hunter's sister then telephoned the Boston police, and Hunter spoke with the responding officers, including Officer John Cronin.

The defense theory was that Hunter had fabricated the events that occurred outside her friend's apartment, and that her motive for this lie originated with the confrontation at the Skycap Lounge. In accordance with this strategy, the defendants attacked Hunter's credibility on cross-examination, suggesting that her expositions to Officer Cronin and to the grand jury were inconsistent with her in-court testimony. Over objection by both defense attorneys, the judge permitted the prosecutor to

---

[12]The judge recognized that the statement in question was not a typical prior consistent statement because the alleged motive to fabricate arose before the statement was uttered. However, under the circumstances, he invoked his discretion to let the jury "hear the whole story."

introduce Hunter's full statement to Officer Cronin as a prior consistent statement.[13]

A witness's prior statement that is consistent with that witness's trial testimony is usually inadmissible. *Commonwealth* v. *Rivera*, 430 Mass. 91, 99 (1999). The rationale for this rule is that ordinarily such statements are "unnecessary and valueless," because the statement of a witness is not made more trustworthy by repeating it. 4 J. Wigmore, Evidence § 1124, at 255 (Chadbourn rev. ed. 1972). However, when trial testimony is impeached by a claim that the witness has recently fabricated her account, a prior consistent statement made before the witness had incentive to fabricate may be admitted for the limited purpose of rebutting the claim of recent fabrication. *Commonwealth* v. *Rivera, supra* at 99-100. It follows that a prior consistent statement made after the motive to fabricate arose is not admissible for this purpose. *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 565 (2001).

Although Hunter's statement to Officer Cronin does not meet the requirements for a prior consistent statement, because Hunter's alleged motive to fabricate arose before the statement was made, this testimony was admissible on other grounds. See *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 168 (1996) ("If there is any basis for upholding the admissibility of the evidence, the reason on which the decision rests is immaterial and the lower court's ruling is sustained"). When a party introduces a portion of a statement in evidence, the doctrine of verbal completeness allows admission of other relevant parts of the same statement to "clarify the context" of the admitted portion and prevent one side from "presenting a fragmented and misleading version of events to the finder of fact." *Commonwealth* v. *Carmona*, 428 Mass. 268, 272 (1998). See *Commonwealth* v. *Watson*, 377 Mass. 814, 825-834 (1979).

---

[13]Hunter's statement to Officer Cronin was consistent with her trial testimony in that it recounted the defendants' presence on Norfolk Street. The statement also mentioned that Young threatened her, grabbed and ripped her shirt, and fired several shots into the car. However, Hunter's full statement to Officer Cronin was also partially inconsistent with her in-court testimony. Most notably, Hunter's statement to Officer Cronin omitted any mention of Tennison's pushing her or speaking to her on the street. In other words, the statement to Officer Cronin inculpated only Young.

Here, while cross-examining Hunter, the defendants elicited only the portions of her statement to Officer Cronin that helped their case. In doing so, the defendants opened the door for the admission of the remainder of that statement, and the judge acted properly to ensure that the jury heard, as he put it, the "whole story." *Commonwealth* v. *Carmona, supra.* This was not a case where the additional testimony was merely loaded with "self-serving statements," or information on unrelated subject matter. Contrast *Commonwealth* v. *Leftwich,* 430 Mass. 865, 872 (2000). As the judge recognized, the full statement as recounted by Officer Cronin helped to explain and put into context the testimony of Cynthia Hunter, and to avoid confusion as the theories of inconsistency, including both inculpatory and exculpatory features, multiplied. Contrast *Commonwealth* v. *Thompson,* 431 Mass. 108, 115, cert. denied, 531 U.S. 834 (2000); *Commonwealth* v. *Leftwich, supra.*

In any event, in light of the jury's verdicts, there was no prejudice to either defendant from the admission of Hunter's full statement to Officer Cronin. As to Young, Hunter's complete statement was that he pointed a gun at her, made threats, ripped her shirt and fired at her sister's car. Young was convicted only of possession of a firearm and possession of ammunition, charges that were not dependent on Hunter's statement. Extensive physical evidence and the testimony of other witnesses supported these indictments. As to the other crimes alleged, which were supported by Hunter's prior statement, Young was acquitted despite this testimony. Regarding Tennison, Hunter's statement to Officer Cronin noted Tennison's presence at the scene, but otherwise omitted her role in the subsequent events. Thus, as to Tennison, the prior statement to Cronin was largely exculpatory. Tennison was convicted only of assault and battery, and nothing in Hunter's statement to Cronin alleged that Tennison had committed an assault and battery.[14]

3. *Other issues.* Young challenges the denial of his motion for a required finding of not guilty on the charge of possession

[14]The judge instructed the jury that they could not consider the incident at the Skycap Lounge as the basis for the indictments. In any event, Hunter's statement to Officer Cronin did not mention that Tennison had pushed her at the lounge.

of a firearm with a barrel less than sixteen inches as defined by
G. L. c. 140, § 121, because there was insufficient evidence that
the barrel had such a length.[15] In reviewing the sufficiency of
the evidence, this court determines "whether the evidence, in its
light most favorable to the Commonwealth . . . is sufficient . . .
to permit the jury to infer the existence of the essential elements
of the crime charged." *Commonwealth* v. *Latimore*, 378 Mass.
671, 676-677 (1979), quoting *Commonwealth* v. *Sandler*, 368
Mass. 729, 740 (1975). The jury are permitted to draw rational
inferences from the evidence. See *Commonwealth* v. *Cruz*, 424
Mass. 207, 210 (1997).

Both Hunter and another witness testified that they saw the
defendant fire the gun and that it was "small." Hunter saw the
gun in defendant Young's hand while standing only two feet
from him. In addition, the commander of the Boston police bal-
listics unit testified that several spent .25 caliber bullets were
recovered from the scene. Viewed in the light most favorable to
the Commonwealth, *Commonwealth* v. *Latimore*, *supra* at 677,
the evidence was sufficient to warrant the jury's conclusion that
the barrel of the weapon used by Young was less than sixteen
inches. See *Commonwealth* v. *Sylvester*, 35 Mass. App. Ct. 906,
907 (1993) (jury could infer assailant was using handgun
because victim testified that defendant held small gun in his
hand and he thought weapon in question was .25 caliber).

Tennison appeals from the denial of her postverdict motion
for a new trial on her assault and battery conviction. See Mass.
R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979). She argues that
Hunter's testimony was not credible and that Hunter was the
only witness to implicate Tennison in the assault and battery.
She also attacks as inconsistent the original jury's sealed verdict
on the assault and battery charge and the "new" jury's guilty
verdict.[16] Tennison further maintains that the fact that Young
was acquitted of assault and battery based on the events on the

[15]To constitute a firearm within the meaning of G. L. c. 140, § 121, "the
instrument in question must be (1) a weapon, (2) capable of discharging a shot
or bullet, and (3) under a certain length." *Commonwealth* v. *Sampson*, 383
Mass. 750, 753 (1981).

[16]Tennison points out in addition that prior to the "new" jury's final
verdicts, they too returned a sealed not guilty verdict on Tennison's assault
and battery charge. However, the jury later asked to reconsider this indict-

street indicates that the jury improperly convicted her for events that took place at the Skycap Lounge. Tennison also supports her motion for a new trial by contending that the procedure leading to the removal of juror no. 5-6 prejudiced the remaining jurors against her. Finally, she states that she had no previous criminal record. The judge's failure to consider these factors, Tennison asserts, was an abuse of discretion.

A motion for a new trial "is addressed to the sound discretion of the trial judge, and . . . will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error." *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995), citing *Commonwealth* v. *Sullivan*, 385 Mass. 497, 503 (1982). The judge's discretion to order a new trial should only be exercised when the verdict "is so greatly against the weight of the evidence as to induce in [the judge's] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice." *Wyatt, petitioner*, 428 Mass. 347, 359-360 (1998), quoting *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 127 (1992). "Reversal for abuse of discretion is particularly rare where the judge acting on the motion was also the trial judge." *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995), quoting *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990). In this case, the judge did not abuse his discretion. Hunter testified that Tennison pushed her outside the apartment, and the jury apparently decided to credit that portion of her testimony. "Credibility is a question for the jury to decide; they may accept or reject, in whole or in part, the testimony presented to them." *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991), quoting *Commonwealth* v. *Parker*, 389 Mass. 27, 31 (1983). As to any possible inconsistencies in the verdicts, mere inconsistency in verdicts does not render a guilty verdict erroneous. *Commonwealth* v. *Hamilton*, 411 Mass. 313, 324 (1991), quoting *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). The record makes it clear that Tennison was

ment, see note 8 *supra*. The judge allowed the jury to do this, properly concluding that the verdict was not yet final because it had not been affirmed in open court. See *Commonwealth* v. *Martell*, 407 Mass. 288, 292 (1990); *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 56 (1984); *Commonwealth* v. *Tobin*, 125 Mass. 203, 207 (1878).

not convicted based on the events at the Skycap Lounge. The judge instructed the jury carefully and precisely on their responsibility to determine the guilt of each defendant separately, and he reminded them that Tennison was not being charged with events that occurred at the Skycap Lounge. We have already indicated that Tennison was not prejudiced by the removal of juror no. 5-6, and that sealed verdicts are not final until orally affirmed in open court. Finally, a defendant's lack of criminal record is "insufficient to warrant ignoring the Commonwealth's ample evidence or disturbing the jury's verdict." *Commonwealth* v. *Almon*, 387 Mass. 599, 608 (1982).

*Judgments affirmed.*