COMMONWEALTH *vs.* DEVON McBROWN.

No. 07-P-192.

Suffolk. March 12, 2008. - June 13, 2008.

Present: GREEN, GRAHAM, & GRAINGER, JJ.

*Controlled Substances. Evidence,* Hearsay, Verbal completeness.

At the trial of an indictment charging the defendant with trafficking in cocaine,
in violation of G. L. c. 94C, § 32E(*b*), the trial judge erred in admitting in
evidence a prior consistent statement of a customs agent (agent) corrobora-
tive of his earlier testimony that the defendant spontaneously confessed his
guilt during the agent's interrogation of the defendant subsequent to the
discovery of the contraband, given that the evidence, drawn from a report
that the agent prepared several days after the interrogation, was central to
the question of the defendant's intent; it could not be said that the evidence
did not influence the jury or that it had but very slight effect; there was no
suggestion at trial that the agent's testimony was a recent fabrication; the
report was not admissible as a past recollection recorded; and the report
did not come within the verbal completeness exception to the rule against
hearsay. [62-65]

INDICTMENT found and returned in the Superior Court Depart-
ment on July 16, 2002.

The case was tried before *Nancy Staffier-Holtz,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services,
for the defendant.

*Macy Lee,* Assistant District Attorney (*Ellen Donahue,* As-
sistant District Attorney, with her) for the Commonwealth.

GREEN, J. A search of a computer bag carried by the defendant
as he entered the United States at Logan International Airport
following a flight from Jamaica uncovered more than six pounds
of cocaine. After a trial, the defendant was convicted on a charge
of trafficking in cocaine, under G. L. c. 94C, § 32E(*b*). The
defendant's defense at trial centered on his claim that he had
agreed to carry the computer bag as a favor to an acquaintance

in Jamaica, unaware that it contained any contraband. We reverse the defendant's conviction because the judge improperly admitted hearsay, which had the effect of corroborating the customs agent's trial testimony that the defendant spontaneously confessed guilt during interrogation at the airport, an assertion unequivocally denied by the defendant in his own testimony.[1]

*Background.* On the evening of May 10, 2002, upon his arrival at Logan International Airport, the defendant presented his passport, customs form, and airline ticket to customs inspector Craig McPherson. McPherson asked the defendant the purpose of his trip, and the defendant replied that he was on a business trip to attend a training seminar. However, the defendant was unable, in response to further questions, to produce any documentation for the seminar. McPherson then asked the defendant when and how he had purchased his ticket, and the defendant replied that the Jamaican government (for whom the defendant worked) had purchased his ticket three days earlier. Examination of the ticket, however, disclosed that the defendant had purchased the ticket with cash on the day of travel. McPherson thought that the defendant appeared nervous during questioning. Based on the inconsistencies in the defendant's answers, as well as his demeanor, McPherson escorted the defendant to a secondary search area for further inspection.

At McPherson's request, the defendant removed a laptop computer from the computer bag and (after some initial difficulty) turned it on. McPherson thought the computer bag seemed unusually heavy following removal of the computer, and took the bag to another area for further inspection, instructing another inspector to remain with the defendant. He examined the bag with an X-ray machine, but was unable to discern any unusual

---

[1]We reject the defendant's separate contention that the search of the computer bag violated his rights under the Fourth Amendment to the United States Constitution. Routine border searches are not subject to the warrant requirements of the Fourth Amendment. See *United States* v. *Flores-Montano,* 541 U.S. 149, 152-153 (2004). Ordinarily, a border search that examines objects or property, rather than the body of a person, is considered routine. See *id.* at 152. Though the United States Supreme Court has intimated that a particularly destructive search of property could in some circumstances be so invasive as to be nonroutine, see *id.* at 154 n.2, this is not such a case. Compare *United States* v. *Cortez-Rocha,* 394 F.3d 1115, 1119 (9th Cir.), cert. denied, 546 U.S. 849 (2005) (cutting open spare tire during border search not so destructive as to be unreasonable).

contents by that means. Using a knife, McPherson made a small incision in the inner fabric lining of the bag, which disclosed something hidden between the lining and the outer shell of the bag. McPherson enlarged the incision, and discovered a package containing a substance later confirmed to be cocaine. The defendant was not present at the time McPherson discovered the cocaine. The cocaine weighed approximately 6.175 pounds. The computer bag, including the cocaine package, weighed a total of 10.26 pounds.

The defendant was taken to another room for questioning. There, customs agent John Coleman administered Miranda warnings to the defendant.[2] At trial, the jury heard conflicting testimony regarding the defendant's responses to Coleman, and we reserve our description of that testimony for our discussion of the defendant's hearsay claim.

*Discussion.* As we have noted, the defendant contended at trial that he was unaware that the computer bag he carried contained contraband. That contention was undermined significantly by the testimony of Coleman, who recounted the defendant's responses during his interrogation at the airport. In particular, Coleman testified that, before he was able to administer Miranda warnings to the defendant, the defendant spontaneously acknowledged his awareness that the computer bag he carried contained drugs.[3] According to Coleman, at the time the defendant made the statement he had not been told that cocaine had been found in the bag; the statement was accordingly significant to rebut the defendant's contention (developed principally through the defendant's testimony) that he lacked criminal intent.

During cross-examination, defense counsel sought to impeach Coleman's assertion by submitting Coleman's notes of the interrogation. The notes, made contemporaneously with the interrogation, made no mention of the defendant's purported spontaneous admission. On redirect examination, however, Coleman was allowed, over the defendant's objection, to read the following passage from his subsequently prepared written report:

[2]In response to Coleman's inquiry, the defendant acknowledged that he understood the Miranda warnings, and that he was not under the influence of any intoxicants.

[3]Coleman testified that the defendant stated that this was the first time he had brought drugs into the United States.

"McBrown stated this was the first time he brought drugs into the United States."[4]

That portion of Coleman's report was consistent with his earlier testimony, and had the effect of corroborating it. However, as a prior consistent statement it was hearsay, and its admission was error.

"As a general matter, a witness's prior statement that is consistent with his testimony at trial is inadmissible." *Commonwealth* v. *Rivera*, 430 Mass. 91, 99 (1999). There are, however, exceptions to the general rule.

One such exception, upon which the trial judge appears to have relied in overruling the defendant's objection, is the doctrine of verbal completeness. Under that doctrine, when a party introduces a portion of a statement in evidence, other relevant parts of the same statement are admissible to "clarify the context" of the admitted portion and thereby to "prevent one side from 'presenting a fragmented and misleading version of events to the finder of fact.' " *Commonwealth* v. *Tennison*, 440 Mass. 553, 563 (2003), quoting from *Commonwealth* v. *Carmona*, 428 Mass. 268, 272 (1998). The doctrine is inapplicable to the circumstances of the present case, however, because Coleman's report was prepared several days after his interrogation of the defendant, and accordingly was a different statement from the notes he made during the interrogation itself. See *Commonwealth* v. *Bianchi*, 435 Mass. 316, 327-328 (2001).

The Commonwealth relies exclusively on the doctrine of verbal completeness in arguing that Coleman's report was properly admitted.[5] Although we may uphold the admissibility of the evidence on other grounds, see *Commonwealth* v. *Tennison*,

---

[4]Coleman was also allowed, again over the defendant's objection, to read another portion from his report: "McBrown stated that he was supposed to deliver the package to a man named Mondo . . . who he met in Boston in April of 2002." Moreover, in addition to allowing Coleman to read directly from his report, the report itself was admitted in evidence. Thereafter, over defense counsel's further objections, Coleman testified to his own prior testimony to the same effect at a motion hearing and to his own out-of-court statement to the same effect made by him to a defense investigator on June 17, 2002.

[5]The Commonwealth's argument that the "statement" for purposes of the doctrine of verbal completeness was the defendant's alleged statement to

*supra,* no alternative basis for admission of Coleman's prior consistent statements applies in the present circumstances. "[W]hen trial testimony is impeached by a claim that the witness has recently fabricated her account, a prior consistent statement . . . may be admitted for the limited purpose of rebutting the claim of recent fabrication." *Ibid.* See *Commonwealth* v. *Martinez,* 425 Mass. 382, 396-397 (1997). Mere impeachment of a witness does not, however, entitle a party to bolster the in-court testimony of the witness with prior consistent statements. See *Commonwealth* v. *Zukoski,* 370 Mass. 23, 27 (1976); *Commonwealth* v. *Bruce,* 61 Mass. App. Ct. 474, 481-482 (2004). See generally Brodin & Avery, Massachusetts Evidence § 6.22, at 374 (8th ed. 2007) ("Prior consistent statements are *not* admissible where [a witness] has been impeached only . . . [by p]rior statements of [the witness] inconsistent with his trial testimony" [emphasis in original]). There was no suggestion at trial that Coleman's trial testimony was a recent fabrication, and in any event there appears no suggestion that any events between the interrogation and the time of trial might have furnished Coleman with motivation to fabricate his account.[6] See *Commonwealth* v. *McLaughlin,* 433 Mass. 558, 567 (2001); *Commonwealth* v. *Bruce, supra* at 482. Similarly, the report was not admissible as a past recollection recorded, as Coleman did not claim to be unable to recall it.[7] See *Commonwealth* v. *McDuffie,* 16 Mass. App. Ct. 1016, 1017 (1983).

As we have observed, Coleman's report served to corroborate

---

Coleman misapprehends the doctrine entirely. The out-of-court statements at issue are the statements of Coleman reflected in his notes and in his separate report, respectively; the defendant's alleged statement during the interrogation is the subject of Coleman's statements. It is irrelevant for purposes of the doctrine that Coleman's out-of-court statements related in turn to statements made by another person (rather than, for example, Coleman's percipient observations of an event).

[6]Moreover, the trial judge gave no instruction to the jury, either at the time the report was admitted or in her closing charge, limiting the purpose for which it could be used.

[7]Coleman initially did not recall the inculpatory statements of the defendant recorded in Coleman's report. However, after reviewing the report Coleman pronounced his recollection refreshed and testified to the substance of the defendant's alleged statements. The use of the report to refresh Coleman's recollection did not permit the report itself to be read to the jury. See *Commonwealth* v. *Daye,* 393 Mass. 55, 65 n.11 (1984).

his assertion, denied by the defendant, that the defendant made statements reflecting his awareness that the computer bag contained drugs. That corroboration operated to counter the defendant's impeachment of Coleman's testimony by reference to Coleman's contemporaneous notes, which made no mention of such statements. The question whether the defendant was aware that he was carrying drugs into the United States was central to the issue of the defendant's intent. We accordingly cannot say that the evidence did not influence the jury or that it had but very slight effect. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 n.7 (1999).[8]

*Conclusion.* The judgment of conviction is reversed, and the verdict set aside. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[8]We need not address the defendant's claim that testimony concerning the defendant's failure to assert his innocence (or to question his detention) while awaiting Coleman's arrival constituted improper comment on the defendant's invocation of his right to remain silent. There was no objection to the testimony, and it is far from clear from the context of the testimony that it invited the jury to infer guilt from the mere fact that the defendant did not spontaneously assert his innocence. Compare *Commonwealth* v. *Haas*, 373 Mass. 545, 559 (1977). Indeed, as we have described, the Commonwealth's theory of the case instead relied significantly on the contrary assertion that the defendant had spontaneously confessed his guilt.