## COMMONWEALTH vs. ADAM NAYLOR.

No. 07-P-727.

Hampden. October 16, 2008. - January 13, 2009.

Present: GREEN, SMITH, & FECTEAU, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Instructions to jury. *Constitutional Law,* Assistance of counsel. *Identification. Evidence,* Identification, Alibi. *Alibi. Intent. Assault and Battery by Means of a Dangerous Weapon. Firearms.*

A trial court judge erred in denying a motion for a new trial brought by a criminal defendant on the ground that his trial counsel was ineffective in failing to present evidence that the defendant's appearance on the day of the alleged drive-by shooting was dramatically different from that depicted in the photograph selected by the identifying witness from a photographic array prepared by the police, where the defense at trial was based on mistaken identification and alibi, and where trial counsel inexplicably failed to exploit the discrepancy in the defendant's appearance, which was perhaps the most significant basis available for that defense. [521-524]

No error arose at a criminal trial from the admission in evidence of prior written statements of alibi witnesses, where the statements were offered for impeachment of the witnesses' trial testimony, rather than for their truth [524]; further, there was no error in the jury instruction regarding the element of intent on the charge of assault and battery by means of a dangerous weapon [524-525].

A trial court judge did not err in denying a criminal defendant's motion for a required finding of not guilty on the charge of carrying a firearm without a license, where there was evidence at trial from which a jury could reasonably infer that the shooter fired a handgun rather than a shotgun or rifle. [525]

INDICTMENTS found and returned in the Superior Court Department on February 5, 2003.

The cases were tried before *Timothy S. Hillman,* J., and a motion for a new trial, filed on October 11, 2007, was considered by *Constance M. Sweeney,* J.

*Patricia Quintilian* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

GREEN, J. Following a jury trial in the Superior Court, the defendant was convicted of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A, among other offenses.[1] The Commonwealth's case relied almost exclusively on the identification of the defendant by one of the two victims of the drive-by shooting out of which the charges arose; the theory of the defense was mistaken identification and alibi. In a motion for a new trial, the defendant contended that his trial counsel was ineffective in failing to present to the jury evidence that his appearance on the day of the incident was dramatically different from that depicted in the photograph selected by the identifying witness from a photographic array prepared by police. We vacate the order denying the defendant's new trial motion and remand the case for an evidentiary hearing.

*Background.* At approximately 11:30 P.M. on December 20, 2002, Lawrence Akers was driving a car through downtown Springfield, on the way to a nightclub. Prez Cope and Mildred Rodriguez were passengers in the car, Cope in the front passenger seat and Rodriguez in the rear seat directly behind Cope. While waiting at a red light, Akers noticed a car pulling up next to him on the left. Though Akers could not see clearly into the other vehicle because the windows were tinted, he could see the silhouettes of multiple passengers in the other car, and it appeared to him that the front passenger was gesturing to him.

The traffic light turned green. As Akers pulled away from the stop, he and the passenger in the other vehicle simultaneously rolled down their windows. At the same time, Akers reached to his right for the volume control on his car radio, in order to turn it down. He then heard gun shots. Akers saw the face of the front passenger and saw a flash coming from what he thought was a gun in the passenger's hand; Cope saw flashes, but did not see the passenger's face. The exchange lasted a few seconds. Both Akers and Cope were struck by bullets in their legs.

---

[1]The jury also convicted the defendant of carrying a firearm without a license, G. L. c. 269, § 10(*a*), and possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*). The jury acquitted the defendant of a second charge of assault and battery by means of a dangerous weapon. The court dismissed two counts of firearm violations by a person previously convicted of a violent crime or serious drug offense, under G. L. c. 269, § 10G(*a*).

As Akers drove to a nearby hospital, he ran a red light and was stopped by police. In response to police questioning during the stop, none of the occupants of Akers's vehicle was able to identify the shooter or any of the other occupants of the vehicle from which the shots were fired, describing them only as "three light-skinned black males, all very young looking."[2] Neither were they able to furnish a license plate number or other specific identifying description for the vehicle; they described a dark-colored car, possibly a Nissan or Honda, with tinted windows. Later, at the hospital, Akers and Cope discussed the shooting with each other. Akers commented that the shooter looked like someone he knew, Leonard Naylor, but younger. Cope responded that Leonard Naylor had a younger brother named Adam, whom Cope knew from having played basketball with him. Akers did not know Adam Naylor, however.

The following day, Akers went to the police station. According to Detective Kervick, during preliminary questioning Akers mentioned that the shooter "looked like a Naylor that he went to school with that was younger."[3] Detective Kervick assembled a photographic array consisting of eight photographs, including a photograph of the defendant taken approximately two years before the shooting incident.[4] All of the photographs in the array were of young black males, with short hair and no facial hair. Akers selected the defendant's photograph from the array. Cope and Rodriguez, presented with arrays that included the same picture of the defendant, did not identify any of the photographs in the array as depicting the shooter.

Trial began on October 12, 2004, and concluded on October 14.[5] At the time of trial, the defendant wore his hair braided, at shoulder length. He also wore a mustache and beard. According to an affidavit of the defendant submitted with his new trial motion, he wore his hair in the same manner in December, 2002,

---

[2]The shooter was further described as wearing a dark baseball cap with an "A" on the front.

[3]As we have observed, Akers had no prior acquaintance with the defendant himself; his reference to "a Naylor that he went to school with" was to the defendant's older brother.

[4]Kervick testified that he selected the defendant's photograph for inclusion in the array because the defendant is a few years younger than Akers.

[5]Sentencing took place on October 18, 2004.

at the time of the shooting incident; that description is corroborated by a photograph of the defendant taken on November 11, 2002, also submitted with the new trial motion.[6] As we have observed, the defense at trial was mistaken identification and alibi.[7] Specifically with reference to the theory of mistaken identification, trial counsel elicited testimony that the shooter had no facial hair and that the photograph of the defendant included in the array had been taken two years before the shooting incident. However, trial counsel did not elicit any testimony from Akers as to the shooter's hair length, or from defense witnesses concerning the defendant's shoulder-length braids. Neither did trial counsel direct the jury's attention to the dramatic difference between the defendant's appearance at the time of trial and his appearance in the photograph Akers selected from the array.

*Discussion.* "A defendant seeking a new trial based on a claim of ineffective assistance of counsel bears the burden to establish both prongs of the familiar test articulated in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974): (i) 'whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer'; and (ii) 'whether [such ineffectiveness] has likely deprived the defendant of an otherwise available, substantial ground of defence.' " *Commonwealth* v. *Pike*, 53 Mass. App. Ct. 757, 760 (2002). On appeal from an order either allowing or denying a motion for a new trial, we review the order for abuse of discretion. See *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). Though we extend special deference to the action of a motion judge who was also the trial judge, where (as here) the motion judge did not preside at trial, "we regard ourselves in as good a position as the motion judge to assess the trial record." *Ibid.*[8]

---

[6]The November 11 photograph was taken at the time of the defendant's arrest by Springfield police on charges that included possession of a firearm without a license. The arrest record was furnished to the defendant's trial counsel during pretrial discovery.

[7]Four defense witnesses testified that the defendant was in New York City on the night of the shooting, celebrating the birthday of one of the alibi witnesses.

[8]We would, of course, defer to the motion judge's assessment of the credibility of any witnesses who testify at a hearing on such a motion. In the

As we have observed, the defense at trial was based on mistaken identification and alibi. In furtherance of that defense, the defendant's trial counsel pointed out to the jury that the photograph included as part of the array reviewed by Akers was two years old at the time it was presented to him (so that the defendant was two years younger in the photograph than he was on the date of the shooting). Counsel also observed the many other factors detracting from the reliability of Akers's identification: the brief duration of the encounter, the fact that Akers was driving forward and adjusting the radio volume at the time he and the shooter rolled down their car windows (and that the tinted windows of the other vehicle prevented Akers from seeing the shooter before the windows were rolled down), the dark nighttime conditions at the time of the encounter, the fact that Akers did not previously know the defendant, the fact that Cope (who did know the defendant) did not identify him as the shooter, and the fact that Akers's attention was drawn to the defendant as a result of Cope's comment that Leonard Naylor (who Akers thought resembled the shooter) had a younger brother.

However, trial counsel inexplicably failed to exploit what was perhaps the most significant basis available for the defense theory: the dramatic difference between the defendant's appearance on the date of the shooting and his appearance in the photograph Akers selected from the array assembled by the police.[9] There appear to have been no tactical grounds for trial counsel to eschew that line of attack on Akers's identification of the defendant.[10] The fact that the defendant had shoulder-length, braided

present case, the motion judge denied the defendant's motion without an evidentiary hearing.

[9]Though the difference between the defendant's appearance at the time of trial and his appearance in the photograph Akers selected from the array would have been obvious to the jury at trial even without emphasis by trial counsel, the jury heard no evidence to establish (or argument to emphasize) the more significant point that the defendant's appearance at the time of the shooting was the same as his appearance at the time of trial and accordingly quite different from that depicted in the photograph Akers selected. In light of the nearly two-year period of time between the date of the shooting and the time of trial, the jury would have had no basis to assume that the defendant's appearance on the date of the shooting was the same as at the time of trial, rather than as depicted in the photograph Akers selected.

[10]The affidavit of trial counsel submitted with the defendant's new trial

hair on the date of the shooting, as he did at trial, could have been developed without adverse effect through testimony of the alibi witnesses (who included one of the defendant's younger brothers).[11] Moreover, counsel could have sought, through cross-examination of Akers, to elicit from Akers himself that he had not observed that the shooter had long hair or braids. Similarly, trial counsel did not cross-examine Cope at trial on the subject of the shooter's hair. It appears that such cross-examination would have borne fruit: though Cope testified that he was unable to identify who the shooter was, Cope stated in an affidavit submitted with the defendant's new trial motion that he saw the shooter and that the shooter did not have braids.[12]

There can be little doubt that counsel's failure deprived the defendant of a substantial ground of defense. "Eyewitness identification of a person whom the witness had never seen before the crime or other incident presents a substantial risk of misidentification and increases the chance of a conviction of an innocent defendant." *Commonwealth* v. *Jones*, 423 Mass. 99, 109 (1996). See *Commonwealth* v. *Johnson*, 420 Mass. 458, 466 (1995), quoting from *United States* v. *Wade*, 388 U.S. 218, 228 (1967) ("the vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification"). "Indeed, studies conducted by psychologists and legal researchers . . . have confirmed that eyewitness

motion states merely that she had "no independent recollection" of why she did not ask Akers at trial whether the shooter had shoulder-length braids. Her affidavit does not address the question why she did not elicit testimony or introduce other evidence that he had such braids on the date of the shooting. The failure of her memory is no doubt attributable to the deplorable delay in preparation of the trial transcript; the transcript was ordered on November 1, 2004, but not completed until May 7, 2007 — a period of more than two and one-half years for the transcript of a three-day trial.

[11]Trial counsel may have been reluctant to introduce the photograph of the defendant, taken incident to his arrest on firearms charges one month prior to the shooting, out of concern that it would have allowed the record of the arrest to come before the jury. However, it may well have been possible (by stipulation or otherwise) to admit the photograph itself, redacted to eliminate the circumstances attending its capture. The defendant did not testify at trial, presumably to avoid admission of his criminal history.

[12]Though the Commonwealth argues that Cope's perception could have been accurate if the shooter had worn long braids tucked into his baseball cap, we consider that suggestion more appropriately directed to a jury.

testimony is often hopelessly unreliable." *Commonwealth* v. *Johnson*, 420 Mass. at 467 (citations omitted). Cf. *Commonwealth* v. *Vardinski*, 438 Mass. 444, 451-452 (2003). By her failure to present evidence to the jury of the significant differences between the defendant's appearance on the date of the shooting and the appearance of the person depicted in the photograph selected by the lone eyewitness to testify at trial, the defendant's attack on the reliability of the witness's identification testimony was substantially weakened. Moreover, counsel's failure prevented the jury from hearing from the other victim (who — unlike Akers — had a prior acquaintance with the defendant) that the shooter did not have long braided hair. We conclude that the motion judge should not have denied the defendant's new trial motion.[13] "In light of the contested nature of this issue and the unavailability of the trial judge to hear a motion for a new trial, affidavits may not be sufficient to resolve the defendant's claim of ineffective assistance of counsel. See *Commonwealth* v. *Brookins*, 416 Mass. 97, 104 (1993). Such a motion would necessarily involve fact finding that is probably best done through an evidentiary hearing. See *ibid.*" *Commonwealth* v. *Ramos*, 66 Mass. App. Ct. 548, 553 (2006).

We need address only briefly the defendant's remaining claims of error. Contrary to the defendant's contention, there was no error in the admission of the prior written statements of the alibi witnesses, as the statements were offered for impeachment of the witnesses' trial testimony, rather than for their truth.[14] There likewise was no error in the jury instruction regarding the element of

---

[13]We need not address the defendant's separate claim that counsel also was ineffective in her failure to ensure the availability of Officer McNeil to testify at trial regarding the discrepancies between the defendant's appearance and the descriptions furnished by the victims during the traffic stop immediately following the shooting. We note, however, that McNeil's testimony likewise would have contributed to the defense of mistaken identification, though perhaps less significantly.

[14]The prior statements furnished an alibi for the defendant on December 20, 2003, rather than on December 20, 2002 (the date of the shooting). To the extent that the statements were inconsistent with the witnesses' trial testimony, they were admissible for purposes of impeachment. The defendant claims error nonetheless in the admission of the portions of the statements that were consistent with the witnesses' trial testimony. There is no merit in the claim. The harm in admitting prior consistent statements is that such statements tend to bolster the credibility of the testimony given at trial. See, e.g., *Com-*

intent on the charge of assault and battery by means of a dangerous weapon; the instruction correctly informed the jury that the defendant must have intended to touch the victims, using a firearm to accomplish the touching. The further explanation (in which the judge stated that the defendant must have intended to "shoot" the victims) collapsed into one expression, perhaps somewhat imprecisely, the requirements of (i) intent to touch and (ii) touching accomplished by means of a firearm. It did not, however, as the defendant argues, incorrectly state that the defendant must merely have intended the action which resulted in the touching. Compare *Commonwealth* v. *Ford*, 424 Mass. 709, 710-712 (1997); *Commonwealth* v. *Moore*, 36 Mass. App. Ct. 455, 458-459 (1994). Finally, with regard to the charge of carrying a firearm without a license, there was no error in denying the motion for a required finding, which was based on the lack of evidence of the gun barrel length. In light of the circumstances of the shooting described by the victims, including the close proximity of the two vehicles and the absence of any statement by either victim of having seen a barrel, the jury could reasonably infer that the shooter fired a handgun rather than a shotgun or rifle. Cf. *Commonwealth* v. *Sperrazza*, 372 Mass. 667, 670 (1977); *Commonwealth* v. *Manning*, 44 Mass. App. Ct. 695, 707 (1998).[15]

The order denying the defendant's motion for a new trial is vacated, and the case is remanded to the Superior Court for an evidentiary hearing.

*So ordered.*

---

*monwealth* v. *McBrown*, 72 Mass. App. Ct. 60, 62-63 (2008). Such bolstering clearly would not prejudice the defendant in the present case. The defendant claims prejudice instead from the use made by the prosecutor of the prior statements in observing that the alibi witnesses did not come forward until shortly before trial. The claimed prejudice accordingly derives from a non-hearsay purpose, based on when the statements were made rather than any assertion contained therein.

[15]Though, as we have observed, see note 10, *supra*, the delay in transcript preparation was deplorable, we need not address the defendant's claim that the delay violated his constitutional right to due process. The prejudice claimed by the defendant as a result of the delay relates to his claim of ineffective assistance of counsel, which we find meritorious despite the impediments cited by the defendant caused by the delay.