A Superior Court jury convicted the defendant of unlawful possession of a firearm and unlawful possession of a loaded firearm.[2] On appeal, he makes three arguments: (1) that the evidence was insufficient that the gun in question had a barrel less than sixteen inches in length, (2) that the judge erred by allowing in evidence only part of a statement that he made to police, and (3) that the judge erred-with respect to the loaded firearm charge-by not instructing the jury that the Commonwealth had to prove that the defendant knew that the gun was loaded. We affirm.
1. Barrel length. "The Commonwealth's burden to prove that a weapon is a 'firearm' in the statutory sense ... requires only that the Commonwealth present some competent evidence from which the jury reasonably can draw inferences that the weapon will fire, ... and that it is under a certain length." Commonwealth v. Humphries, 465 Mass. 762, 774 (2013) (quotation omitted). We agree with the Commonwealth that there was sufficient circumstantial proof here that the barrel of the gun in question was less than sixteen inches. A witness testified that after approaching him, the defendant "pulled a gun on [him],"[3] allowing the jury to infer that the gun had been small enough to conceal. See Commonwealth v. Evans, 439 Mass. 184, 198 (2003) ("Because [the defendant] removed the gun from his pocket, the grand jury could have inferred that the barrel length was less than sixteen inches"). According to the witness, the defendant grabbed him with "his left hand" and, while still holding him, held the gun "right in [his] face." The victim was not able to describe the gun, as it was being held so close to his face. The fact that the gun was held so close that the witness could not get a good look at it supports an inference that the barrel was shorter than sixteen inches. See Commonwealth v. Naylor, 73 Mass. App. Ct. 518, 525 (2009). The same is true about the fact that the defendant was able to fire the gun using only one hand. See Commonwealth v. Manning, 44 Mass. App. Ct. 695, 707 (1998). The evidence was sufficient.
2. The defendant's statements to the police. The charges were based on a shooting incident that occurred on Evergreen Avenue near the Winter Hill School area (Winter Hill area) in Somerville. During the incident, the defendant was stabbed. According to a Somerville police report, the defendant, when interviewed at the hospital, told a Somerville police detective that he had been stabbed while attempting to purchase marijuana in the Haines Square area in Medford. A police investigation, which relied in part on cellular telephone records, revealed that the defendant had been in the Winter Hill area during the relevant time period. This drew a connection between the defendant's stabbing and the shooting incident in that area. After the detective confronted the defendant on what the police had learned, the defendant admitted that he had been in the Winter Hill area. The only evidence that the Commonwealth presented about the defendant changing his story was the following testimony from the detective:
THE PROSECUTOR : "Did you then [that is, after the defendant had told his initial story] tell [the defendant] that you had been conducting an investigation and tell him part of what your investigation had turned up?"
THE DETECTIVE : "Yes."
THE PROSECUTOR : "And did he then say that he had been in the Winter Hill area of Somerville?"
THE DETECTIVE : "Yes."
According to that police report, the defendant, during his interview, told the detective his version of what occurred during the Winter Hill area incident (essentially, that he was stabbed while attempting to purchase marijuana and that the person who accompanied him shot the person who stabbed him). The Commonwealth moved to exclude those statements as inadmissible hearsay not fitting any exception, and the judge allowed the motion in limine. As he did below, the defendant argues that this was error under the "doctrine of verbal completeness." See Commonwealth v. Eugene, 438 Mass. 343, 350-351 (2003). We review the allowance of a motion in limine under an abuse of discretion standard. Commonwealth v. Spencer, 465 Mass. 32, 48 (2013).
As the parties agree, the key question here is whether the excluded portion of the defendant's statement to the police is "necessary to the understanding of" what was admitted. Eugene, supra at 351. We agree with the Commonwealth that it is not. As the quoted portion of the detective's testimony reveals, very little from the defendant's interview was admitted. For example, there were no statements admitted as to what occurred in the Winter Hill area. Instead, the admitted portion was merely that, after being confronted with "part of what [the police investigation] had turned up," the defendant admitted "that he had been in the Winter Hill area of Somerville," and not-as he had previously had claimed-in Medford. The fact that the defendant went on to tell the detective his version of what specifically occurred during that incident is not necessary to clarify his admission that he was in the Winter Hill area.
In arguing that admission of his entire statement was required for "verbal completeness," the defendant relies principally on Commonwealth v. Crayton, 470 Mass. 228 (2014). In Crayton, eyewitnesses identified the defendant as the person they had seen viewing child pornography on a particular library computer. Id. at 230-231. The jury heard testimony that when the police confronted the defendant at the library about an "incident" that had occurred the previous day, the defendant admitted that he had used the very computer in question. Id. at 246. The defendant's denial to the police that he had viewed child pornography on that computer was excluded. Ibid. The Supreme Judicial Court held this to be error, reasoning as follows:
"By excluding the defendant's denial, the judge might have left the jury with the false impression that the defendant had not denied viewing the child pornography where an innocent person would have denied it, and therefore, there was a significant risk that a reasonable jury might have understood the other statements the defendant made to the detectives as an implied admission to having viewed the child pornography."
Id. at 247. By analogy, the defendant before us argues that excluding his statement about what happened during the shooting incident left the jury with the impression that his failure to deny his culpability was tantamount to an implied admission of it.
The defendant's analogy to Crayton is not without some force, but, in our view, Crayton is distinguishable. Most importantly, the defendant in Crayton may have admitted that he used the particular computer in question, but he denied any role in the "incident" about which he was being questioned. Id. at 246. Here, by contrast, the defendant did not-in the excluded portion of the statements the defendant made to the detective-deny that he was involved in the shooting incident under discussion.[4] Instead, the excluded evidence went to what role the defendant played in that incident. Nothing in the admitted portion of the defendant's statement to the detective went to those particulars. Under these circumstances, allowing the jury to hear the defendant's version of what occurred during the shooting was not necessary to clarify, or to set necessary context for, his general admission that he was in the area. Therefore, in our view, the judge did not abuse her discretion in excluding such evidence.
3. Knowledge that the firearm was loaded. Finally, the defendant claims error in the failure of the judge to instruct the jury that to be convicted of unlawful possession of a loaded firearm, the defendant had to know that the gun was loaded. Because no objection to the absence of such an instruction was lodged, we review only for whether there was error creating a substantial risk of a miscarriage of justice. See Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 7 (2001).
Whether proof of such knowledge is required is currently pending before the Supreme Judicial Court. See Commonwealth v. Brown, 91 Mass. App. Ct. 286, 289-293 (2017), further appellate review granted, 477 Mass. 1104 (2017). Nonetheless, we agree with the Commonwealth that, however the court resolves that question, the defendant has not demonstrated how the absence of such an instruction here caused a substantial risk of a miscarriage of justice.
Although the jury were instructed on accessory and joint venture liability, the theory on which the Commonwealth focused almost entirely at trial was that the defendant was the shooter. While the only witness to the incident could not identify the person who shot him, he did testify that the person he stabbed was the shooter, and it is uncontested that it was the defendant who was stabbed. As the Commonwealth points out, the shooter obviously knew the gun he possessed was loaded because he fired it multiple times.
The defendant maintained that he was not the shooter and, through cross-examination and argument, he suggested that the shots were fired by the person who had accompanied him to the drug deal and who the defendant did not know was armed. Consistent with the judge's instructions, which we are to presume the jury followed, the jury could not have convicted the defendant under a theory that he was an accessory or joint venturer unless they found that he knew his companion had a gun. There is, of course, a theoretical possibility that the defendant-if not himself the shooter-knew that the person accompanying him to the drug deal was armed, but did not know the gun was loaded. However, we consider it unlikely that the jury would have reached that conclusion based on this record. In sum, assuming that an instruction that the defendant had to know that the firearm was loaded was required to make out a violation of unlawful possession of a loaded firearm, we conclude that the absence of such an instruction here did not create a substantial risk of a miscarriage of justice. See Commonwealth v. LeFave, 430 Mass. 169, 174 (1999) (equating a substantial risk of a miscarriage of justice with "serious doubt whether the result of the trial might have been different had the error not been made").
Judgments affirmed.

The jury acquitted him of armed assault with intent to murder, assault and battery by means of a dangerous weapon causing serious bodily injury, and discharging a firearm within 500 feet of a dwelling or other building. After the jury could not reach a verdict on two other charges (armed assault with intent to rob and assault by means of a dangerous weapon), the defendant pleaded guilty to those charges.

The witness was unable to identify who had pulled the gun on him.

For example, the defendant did not say, "Yes, I was in Winter Hill, but only on my way driving home."