## COMMONWEALTH vs. SPASSKY ALCEQUIECZ.

Essex. February 7, 2013. - June 13, 2013.

Present: IRELAND, C.J., SPINA, CORDY, DUFFLY, & LENK, JJ.

*Homicide. Assault and Battery by Means of a Dangerous Weapon. Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Instructions to jury, Argument by prosecutor, Duplicative convictions, Capital case. *Felony-Murder Rule.*

At the trial of an indictment charging murder in the first degree on a theory of felony-murder, no substantial likelihood of a miscarriage of justice arose from counsel's failure to request a provocation instruction, where evidence of provocation resulting in a heat of passion is not germane to felony-murder, even where the alleged provocation preceded the commission of the predicate felony. [562-564]

At the trial of an indictment charging murder in the first degree on a theory of felony-murder, no substantial likelihood of a miscarriage of justice arose from counsel's failure to argue that the killing occurred after the predicate felony of armed burglary had already been completed, where there was ample evidence that the defendant killed the victim in the commission of the armed burglary. [564-566]

At a murder trial, no substantial likelihood of a miscarriage of justice arose from counsel's failure to object to the judge's instructions on felony-murder or to otherwise seek additional instructions for clarification, where the instructions given were those set forth in the model jury instructions and they correctly explained the required connection between the predicate felony and the killing in order to sustain a conviction for felony-murder. [566-567]

At a murder trial, no substantial likelihood of a miscarriage of justice arose from the prosecutor's improper statement in his closing argument asking the jury to identify with the victim, where, given that the evidence of guilt was strong and that eliciting sympathy for the victim was not a focus of the Commonwealth's argument, the single, isolated statement would have had but little effect, and where the judge's instructions further mitigated any impropriety in the closing argument. [567-568]

At the trial of indictments charging, inter alia, murder in the first degree on a theory of felony-murder and armed burglary, the defendant's conviction of armed burglary was duplicative of his conviction of felony-murder, where armed burglary was the predicate felony; accordingly, this court vacated the conviction of armed burglary. [568]

INDICTMENTS found and returned in the Superior Court Department on May 30, 2007.

The cases were tried before *Howard J. Whitehead*, J., and a motion for a new trial was heard by him.

*Dennis Shedd* for the defendant.

*Kenneth E. Steinfield*, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. After entering the home of his former girl friend, the defendant struck her in the head with a car battery "charger pack" and fatally stabbed her new boy friend with a kitchen knife. The defendant was convicted of murder in the first degree on a theory of felony-murder, G. L. c. 265, § 1.[1] He was also convicted of armed burglary, G. L. c. 266, § 14, and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (*b*).[2] Represented by new counsel, the defendant filed a motion for a new trial alleging ineffective assistance of trial counsel. That motion was denied.

The defendant's appeals from his convictions and from the denial of his motion for a new trial have been consolidated before this court. On appeal, the defendant argues that his trial counsel was ineffective in several respects; the prosecutor's closing argument was improper; and that his conviction of armed burglary was duplicative of his conviction of felony-murder. The defendant also seeks relief pursuant to G. L. c. 278, § 33E.

We affirm the convictions of felony-murder and assault and battery by means of a dangerous weapon. Because the armed burglary was the predicate felony for the defendant's felony-murder conviction, it is duplicative and must be vacated. See *Commonwealth* v. *Johnson*, 463 Mass. 95, 97 (2012). Having examined the entire record pursuant to our duty under G. L. c. 278, § 33E, we discern no basis on which to grant extraordinary relief.

*Background.* The jury could have found the following facts. The defendant and Amanda Poisson began dating in 2001. By early 2007, they, their three year old son, and Poisson's nine

---

[1] The predicate felony was armed burglary, G. L. c. 266, § 14, an offense punishable by life imprisonment. See G. L. c. 265, § 1 ("Murder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree").

[2] The jury did not find the defendant guilty of murder in the first degree on the theories of deliberate premeditation or extreme atrocity or cruelty.

year old daughter were living together in a house in Lynn. Carol DeChristoforo, a friend of Poisson's mother, also rented a room in the house. In March, 2007, the defendant, Poisson, and the children were staying elsewhere temporarily while the house was being renovated. During that time, Poisson decided to end her relationship with the defendant, and the defendant moved to an apartment in another city. Poisson and her children moved back to the house owned by her parents. At around the same time, Poisson began dating Carlos Mejia.

After their relationship ended, the defendant and Poisson remained in frequent contact, in part because they continued to share two automobiles, which they exchanged approximately every two days. The defendant first met Mejia in early April, 2007, at a birthday party for Poisson's daughter, but Poisson did not tell the defendant that she and Mejia were dating. One week later, Poisson spent the night at the defendant's apartment, where they engaged in sexual intercourse. The next morning, Poisson told the defendant "that [she] still wanted to go [her] separate way," notwithstanding the events of the prior evening.

Several nights later, on April 19, the defendant spent the evening drinking and using cocaine with friends. Mejia was visiting Poisson that night. At approximately 3:18 A.M. on April 20, the defendant telephoned Poisson, who pretended to have been sleeping. The defendant asked her if he could spend the night at her house. Poisson told the defendant to go home. The defendant told Poisson that "the only reason why [she] wouldn't let him in the house is if somebody was there." Poisson again told the defendant to go home, and hung up the telephone. The defendant called back immediately, and Poisson reiterated that he should go home. The defendant then said, "Did you forget that I have the keys to the house?"[3] and hung up.

As she was speaking with the defendant, Poisson was headed downstairs. She went to the living room window, looked out, and saw the defendant's automobile parked outside. The defendant, who had been standing on the front porch, unlocked the front door, but was prevented from entering the house by the chain lock on the door. The defendant asked Poisson to come

---

[3]When the defendant and Poisson exchanged automobiles, they also exchanged sets of keys; each key ring also held a key to the house.

outside to talk to him. When she declined, he said, "Just tell me if somebody's here, if somebody's here I'll leave." Poisson then told him that Mejia was inside, and that they were watching a movie.

After learning that Mejia was in the house, the defendant picked up the car battery charger pack that was on the front porch and used it to smash several window panes above the front door. When he told Poisson that he would break down the door if she did not open it, she opened the door. The defendant entered the house and struck Poisson in the head with the car battery charger pack, knocking her backward, and then struck her in the head a second time. The defendant tried to strike a third time, but Poisson blocked the defendant's blow with her arms.

The defendant went up the stairs to the hallway on the second floor of the house, which led to four bedrooms. Poisson's bedroom was the same one that she had shared with the defendant when he lived there. DeChristoforo and the two children each occupied one of the other three bedrooms. The defendant found Mejia in Poisson's bedroom and told him, "This is what I wanted to see. I wanted to see you here in my house, in my bedroom." DeChristoforo heard the commotion and telephoned 911. The defendant went back downstairs and briefly left the house.

While the defendant was outside, Poisson staggered upstairs, dizzy and bleeding from her head. When she heard the defendant reenter the house, she hid in her daughter's bedroom. The defendant again went upstairs. He told DeChristoforo that there was no need to telephone 911, and said that he wanted to take his son with him. The defendant took his son, left the house, put the boy in the automobile that Poisson had been using, which was parked in the driveway, and locked it.[4]

Poisson heard the defendant leave the house, and joined her daughter, Mejia, and DeChristoforo in DeChristoforo's bedroom. Poisson told DeChristoforo that she needed an ambulance, and DeChristoforo placed a second 911 telephone call. When Poisson heard the defendant coming back upstairs, she hid in DeChristoforo's closet. This time, as the defendant ascended the

---

[4]Poisson had hung the keys to that automobile on a hook in the kitchen. The jury could have inferred that the defendant was familiar with this practice from when he lived with Poisson in the same house.

stairs, he was holding a thirteen-inch kitchen knife.[5] He tried to force his way into DeChristoforo's bedroom, as Mejia pressed his body against the bedroom door in order to prevent the defendant from entering.

Through continuous pressure, the defendant managed to crack the door open just enough to permit his right arm, which was holding the knife, to reach into the bedroom. The defendant swung the knife at Mejia as Mejia continued to push against the door. At first, Mejia had DeChristoforo's jacket wrapped around his arm for protection. As the defendant continued to swing the knife, Mejia dropped the jacket. The defendant managed to push his upper body through the partially open door into the room. He looked at Mejia, swung the knife one last time, and pulled his arm out. Covered in blood, Mejia slid down against the bedroom wall and onto the floor.

After the defendant had descended the stairs, DeChristoforo heard him shout, "Yeah, I did it. Yeah, I did it." Still carrying the knife, the defendant encountered two police officers entering the house; they commanded that he stop and put down the knife. He tossed the knife onto the couch, next to a second knife that was lying there.[6] Poisson attempted to assist a police officer who had come upstairs in attending to Mejia's wounds[7] and then went downstairs, where she saw the defendant in handcuffs. As one of the officers was escorting the defendant from the house, Poisson told the defendant that he probably had killed Mejia, and the defendant replied, "You cheated on me. You're a whore."

En route to the police station, the defendant asked one of the police officers, "What would you do if you found your girl with someone else in your home?" Answering his own question, the defendant said that he would do "whatever it took," even if it put him away for "the longest time." He also said that he "just cut him once a little bit."

Medical evidence established that Mejia had suffered four

[5]At some point before the defendant came upstairs with the knife, DeChristoforo heard the defendant in the hallway saying, "If I had a fucking gun, I'd kill you all."

[6]A knife block that held knives was found in the kitchen; the two knives on the couch appeared to belong to that knife set.

[7]Mejia was transported by ambulance to a hospital; he died shortly thereafter.

stab wounds. One of the stabbings had perforated Mejia's sub-clavian artery, which caused Mejia to die from blood loss. The blows to Poisson resulted in a laceration on the left side of her head that required seventeen staples.

At trial, the defendant did not contest the evidence showing that he had assaulted and battered Poisson and killed Mejia. He introduced evidence to support his claim that he had been under the influence of alcohol and cocaine at the time of the events. He argued that the jury could consider this evidence in deciding whether the Commonwealth had met its burden of proving his state of mind beyond a reasonable doubt. The defendant argued also that he had stabbed Mejia while in the heat of passion after learning that Poisson was romantically involved with Mejia. In addition, the defendant maintained that he had a lawful right to enter Poisson's home,[8] and therefore that he could not be guilty of armed burglary and could not be guilty of felony-murder predicated on the armed burglary.

*Discussion.* 1. *Ineffective assistance of counsel.* "Where the claim of ineffective assistance is raised in a motion for a new trial that has been denied, and where the appeal from the denial of that motion is raised in conjunction with a direct appeal under G. L. c. 278, § 33E," we review the claim of error to determine whether there exists a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Morales*, 453 Mass. 40, 44 (2009). See *Commonwealth* v. *Stewart*, 460 Mass. 817, 832 (2011). "This standard is more favorable to a defendant than the constitutional standard for determining the ineffectiveness of counsel." *Commonwealth* v. *Jenkins*, 458 Mass. 791, 804 (2011), citing *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992). Under this standard, we consider "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Frank*, 433 Mass. 185, 187-188 (2001), quoting *Commonwealth* v. *Wright*, *supra* at 682. "A strategic decision

---

[8]The defendant argued in closing that he and Poisson had not unequivocally ended their relationship; in support of this claim, he pointed to evidence that he continued to pay rent and a portion of the utility bills, and that he had a key to the house.

by an attorney, however, constitutes error 'only if it was mani-
festly unreasonable when made.' " *Commonwealth* v. *Jenkins*,
*supra* at 804-805, quoting *Commonwealth* v. *Coonan*, 428 Mass.
823, 827 (1999). It is the defendant's burden to prove the inef-
fective assistance of counsel. See, e.g., *Commonwealth* v. *Jen-
kins*, *supra* at 805.

The defendant argues that trial counsel was ineffective for
failing to request a provocation instruction with respect to the
felony-murder charge, for failing to argue that the killing of
Mejia occurred after the armed burglary was complete, rather
than during its commission, and for failing to request supplemen-
tal jury instructions clarifying that a killing must occur in the
commission of, and not after, a felony in order to support a
conviction of murder on a theory of felony-murder.

a. *Provocation instruction.* Trial counsel argued that the
defendant killed Mejia while in the heat of passion after discover-
ing that Mejia was romantically involved with Poisson. Because
counsel agreed with the judge and the prosecutor that provoca-
tion resulting in the heat of passion does not reduce felony-
murder to voluntary manslaughter, the judge instructed the jury
that they could not consider provocation with regard to the
charge of murder in the first degree on the theory of felony-
murder.[9]

There was no error. A killing is manslaughter, not murder, "if
there is 'provocation deemed adequate in law to cause the ac-
cused to lose his self-control in the heat of passion, and if the
killing followed the provocation before sufficient time had
elapsed for the accused's temper to cool.' " *Commonwealth* v.
*Vinton*, 432 Mass. 180, 189 (2000), quoting *Commonwealth* v.
*LeClair*, 429 Mass. 313, 316 (1999). Heat of passion operates
to negate malice; thus it is immaterial to felony-murder, "where
malice need not be shown." *Commonwealth* v. *Rolon*, 438 Mass.
808, 823 (2003). "For felony-murder, the intent to commit the
predicate felony substitutes for malice. . . . Evidence of

---

[9]The judge did give a provocation instruction in connection with his instruc-
tions on murder in the first degree on a theory of deliberate premeditation,
murder in the first degree on a theory of extreme atrocity or cruelty, and
murder in the second degree. In addition, the judge instructed on voluntary
manslaughter and involuntary manslaughter.

provocation would not in any sense detract from evidence that the defendant committed the predicate felony and is not a proper basis on which to reduce a conviction of felony-murder." *Id.*[10] Provocation resulting in a heat of passion is therefore "not germane to felony-murder." *Commonwealth* v. *Smith*, 459 Mass. 538, 556 (2011).

Notwithstanding this well-established principle, the defendant contends that provocation should mitigate felony-murder to manslaughter where the provocation preceded the intent to commit the predicate felony. In support of this argument, the defendant relies solely on *People* v. *Williams*, 164 Ill. App. 3d 99, 110 (1988). In that case, the court concluded that a verdict of manslaughter based upon provocation should be available "where evidence has been presented that the provocation occurs prior to the time that a defendant forms a felonious intent or commits a forcible felony." *Id.* That holding, however, was abrogated by the Illinois Supreme Court in *People* v. *Morgan*, 197 Ill. 2d 404, 451-452 (2001). Moreover, we have determined that evidence of provocation is immaterial to a charge of felony-murder even where the alleged provocation preceded the commission of the predicate felony. See *Commonwealth* v. *Rolon*, *supra* at 810-811, 822, 825-826 (defendant claimed provocation to commit armed burglary, during which he killed victim). We decline to revisit that holding.

b. *Killing during the commission of armed burglary.*[11,12] The

[10]The alleged felonious conduct must, however, constitute "sufficient danger to human life" in order to replace the malice element required for murder and to support a felony-murder conviction. *Commonwealth* v. *Matchett*, 386 Mass. 492, 507 (1982). See *Commonwealth* v. *Gunter*, 427 Mass. 259, 272 n.14 (1998).

[11]At trial the defendant argued that he could not be convicted of armed burglary because, on the night of the killing, he had a right of occupation of Poisson's house. See *Commonwealth* v. *Robbins*, 422 Mass. 305, 313 (1996), citing *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 357 (1988) (one cannot burglarize one's own dwelling). The defendant does not press this argument on appeal. Nonetheless, we consider it in connection with our review of the entire record pursuant to G. L. c. 278, § 33E. We conclude that the judge properly instructed the jury on the factors they should consider in determining whether the defendant had a right of occupation of Poisson's house on the night of the killing, see *Commonwealth* v. *Robbins*, *supra* at 315, and the jury reasonably could have found that the defendant had no such right.

[12]Although the defendant did not otherwise challenge the sufficiency of the

defendant claims also that trial counsel was ineffective for failing to argue that the killing of Mejia occurred after the armed burglary was completed, rather than during the commission of the armed burglary. The defendant maintains that the killing does not constitute felony-murder because the armed burglary and the killing were separate and independent offenses. We do not agree.

The Legislature has provided that a killing constitutes felony-murder if the killing occurs "in the commission or attempted commission of" a predicate felony. G. L. c. 265, § 1. We have interpreted this statutory language to mean that the killing must occur "in connection with the felony and at substantially the same time and place." *Commonwealth* v. *Rolon, supra* at 818 n.11, quoting Model Jury Instructions on Homicide 16, 17-18 (1999). See *Commonwealth* v. *Gordon*, 422 Mass. 816, 850 (1996); *Commonwealth* v. *Ortiz*, 408 Mass. 463, 466 (1990). The killing and the predicate felony "need only to have occurred as part of one continuous transaction." *Commonwealth* v. *Ortiz, supra.* See *Commonwealth* v. *Blackwell*, 422 Mass. 294, 300 n.2 (1996) (killing must be "within the res gestae" of felonious conduct). Contrary to the defendant's suggestion, the killing may occur after the predicate felony is technically complete. See *Commonwealth* v. *Rogers*, 459 Mass. 249, 255-256, cert. denied, 132 S. Ct. 813 (2011); *Commonwealth* v. *Dellelo*, 349 Mass. 525, 529-530 (1965); *Commonwealth* v. *Gricus*, 317 Mass. 403, 412-413 (1944). Thus, even though the crime of burglary is complete upon the entry of a dwelling at night with

evidence supporting the armed burglary conviction, we have reviewed that evidence pursuant to our duty under G. L. c. 278, § 33E. We conclude that the jury reasonably could have found that the defendant committed an armed burglary by breaking and entering the dwelling of another in the night time with the intent to commit a felony therein (assault and battery by means of a dangerous weapon on Poisson), that a person was lawfully inside the dwelling, and that the defendant was armed with a dangerous weapon at the time of the breaking and entering. See *Commonwealth* v. *Negron*, 462 Mass. 102, 110 (2012). Although a car battery "charger pack" is not a dangerous weapon per se, the jury reasonably could have concluded that the defendant used the car battery charger pack in a dangerous fashion such that it was "capable of producing serious bodily harm." *Commonwealth* v. *Tevlin*, 433 Mass. 305, 310 (2001), quoting *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 397 (1987). See, e.g., *Commonwealth* v. *Wolinski*, 431 Mass. 228, 236 & n.13 (2000) (flashlight and motorcycle chain can be dangerous weapons).

felonious intent, see *Commonwealth* v. *Gunter*, 427 Mass. 259, 273 (1998), a burglar may be convicted of felony-murder for killing someone once he is inside the dwelling. See *Commonwealth* v. *Rolon, supra* at 818.

Here, the defendant stabbed Mejia only minutes after entering Poisson's house. The entire span of events took place over the course of less than nine minutes: the defendant first telephoned Poisson from in front of her house at 3:18 A.M., and the first paramedic arrived on the scene at 3:27 A.M., some time after police had arrived. After entering the house and hitting Poisson with the car battery charger pack, the defendant went directly upstairs to confront Mejia in Poisson's bedroom. He told Mejia, "This is what I wanted to see. I wanted to see you here in my house, in my bedroom." Almost immediately thereafter, he said, "If I had a fucking gun, I'd kill you all." The defendant then armed himself with a kitchen knife and stabbed Mejia four times.

The armed burglary and the stabbing of Mejia were part of a single transaction consisting of an unbroken sequence of events precipitated by the defendant's learning that Mejia was spending the night with Poisson. The two were causally related in that, "were [it] not for the underlying felony, it is probable that [Mejia] would not have been . . . stabbed." *Commonwealth* v. *Gordon, supra* at 851. See also *Commonwealth* v. *Ortiz, supra.* Because there was ample evidence that the defendant killed Mejia in the commission of the armed burglary, trial counsel was not ineffective for failing to make an argument that had a "minimal chance of success." See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983).

c. *Jury instructions on felony-murder.* The judge instructed the jury that, in order to convict the defendant of felony-murder, they had to find that "the killing of Mr. Mejia occurred during the commission of the armed burglary." The judge explained further that "the killing [must have] occurred in connection with the armed burglary and at substantially the same time and place." The defendant faults counsel for failing to object to these instructions or otherwise seek additional instructions for clarification.

The instructions given by the judge were those set forth in

the Model Jury Instructions on Homicide 15-17 (1999),[13] and they correctly explained the required connection between the predicate felony and the killing in order to sustain a conviction for felony-murder. See, e.g., *Commonwealth* v. *Rolon, supra* at 818 n.11. Because there was no error in the judge's instructions, trial counsel's failure to object to the instructions or to request clarifying instructions could not have been ineffective.

2. *Prosecutor's closing argument.* In his closing argument, the prosecutor asked the jurors to hold the car battery charger pack used by the defendant to strike Poisson. He urged them to "try to picture in your mind's eye being struck in the head, a person being struck in the head with that object. Imagine what it was like for her to receive those blows." The defendant argues, and the Commonwealth concedes, that this statement was improper. See *Commonwealth* v. *Bizanowicz*, 459 Mass. 400, 420 (2011) ("jury should not be asked to put themselves 'in the shoes' of the victim, or otherwise be asked to identify with the victim").

The defendant did not object to these statements at trial. We therefore review to determine if the error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992). We conclude that it did not. The evidence of guilt was strong, and eliciting sympathy for Poisson was not a focus of the Commonwealth's argument. See *Commonwealth* v. *Burgos*, 462 Mass. 53, 69, cert. denied, 133 S. Ct. 796 (2012). This single, isolated statement would have had but little effect. See *Commonwealth* v. *Mitchell*, 428 Mass. 852, 857 (1999) (no substantial likelihood of miscarriage of justice where improper "remarks were isolated and were not a significant or even a focal portion of the prosecutor's closing"). In addition, the judge instructed the jury that closing arguments "are not evidence in the case," and that they should not "determine the facts based upon any bias, or prejudice or fear or sympathy." These instructions "further mitigated any impropriety in the closing argument." *Commonwealth* v. *Bonds*, 445 Mass. 821,

---

[13]The Model Jury Instructions on Homicide released in March, 2013, are substantially the same in this respect. See Model Jury Instructions on Homicide 54-55 (2013).

836 (2006). See *Commonwealth* v. *Sylvia*, 456 Mass. 182, 195 (2010).

3. *Duplicative convictions.* The defendant argues, and the Commonwealth concedes, that the defendant's conviction for armed burglary is duplicative of his conviction for felony-murder, since armed burglary was the predicate felony for the felony-murder charge. "When a murder conviction is based on a felony-murder theory, the underlying felony, whatever it may be, is always a lesser included offense and the conviction for that felony, in addition to the conviction of murder, is duplicative." *Commonwealth* v. *Rasmusen*, 444 Mass. 657, 666 (2005), quoting *Commonwealth* v. *Gunter*, 427 Mass. 259, 276 (1998). See, e.g., *Commonwealth* v. *Rivera*, 464 Mass. 56, 81-82 (2013); *Commonwealth* v. *Semedo*, 456 Mass. 1, 3 (2010); *Commonwealth* v. *Rolon*, *supra* at 820. Consequently, the defendant's conviction of armed burglary must be vacated.

4. *Review under G. L. c. 278, § 33E.* After careful review of the entire record, we conclude that there is no basis to reduce the murder conviction to a lesser degree of guilt or to order a new trial.

*Conclusion.* The denial of the defendant's motion for a new trial is affirmed. The conviction of murder in the first degree and the conviction of assault and battery by means of a dangerous weapon are affirmed. The judgment of conviction of armed burglary is reversed, the verdict is set aside, and that indictment is remanded to the Superior Court for entry of a judgment of dismissal.

*So ordered.*