COMMONWEALTH vs. ANGEL LUIS RIVERA.

Hampden. April 6, 1999. - July 16, 1999.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Agreement between prosecutor and witness, Plea, Argument by prosecutor, Capital case. *Evidence,* Credibility of witness, Prior consistent statement. *Witness,* Credibility.

In the circumstances of a murder case in which several witnesses testified pursuant to plea agreements or in return for consideration in sentencing, the prosecutor should not have questioned those witnesses on direct examination about their respective obligations to testify "truthfully"; however, with respect to three witnesses to whose limited direct testimony on the subject defense counsel did not object, no substantial likelihood of a miscarriage of justice was created, particularly in light of the judge's admonitory instructions to the jury [95-97]; and with respect to the testimony of a fourth witness and the written plea agreement of another, admitted over the defendant's objection, there was no error [97-98].

At the trial of a murder case, the prosecutor's closing argument did not impermissibly vouch for the truth of the prosecution witnesses' testimony. [98-99]

At a murder trial, the judge properly admitted in evidence prior statements of certain prosecution witnesses consistent with their trial testimony to rebut claims of recent contrivance or inducement raised by the defendant [99-100], and the judge's failure, on her own motion, to give a limiting instruction to the jury did not create a substantial likelihood of a miscarriage of justice [100].

At the trial of a murder case, the prosecutor properly argued reasonable inferences from the evidence. [100-101]

INDICTMENT found and returned in the Superior Court Department on April 26, 1996.

The case was tried before *Constance M. Sweeney,* J.

*James Hammerschmith,* Committee for Public Counsel Services, for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

MARSHALL, J. The defendant, Angel Luis Rivera, appeals from his conviction of accessory before the fact to murder in the first

degree on a theory of deliberate premeditation. G. L. c. 274, § 2. On appeal, he argues that his conviction should be reversed because the prosecutor improperly elicited on direct examination testimony from several witnesses regarding their obligation to testify truthfully under their agreement with the government, and improperly vouched for those witnesses' veracity in her closing argument; improperly elicited prior consistent statements from two witnesses; and argued facts not in evidence. He seeks a new trial on the basis of the cumulative effect of these alleged errors pursuant to G. L. c. 278, § 33E. See *Commonwealth* v. *Angiulo*, 415 Mass. 502, 507-510 (1993). We affirm the conviction and decline to exercise our statutory power.

The defendant was the president of the Latin Kings at the Westover Job Corps in Chicopee. As president, the defendant had authority within the Latin Kings to conduct initiations, order "missions," and mete out punishment. The punishment for refusing a mission to kill was death. In his capacity as president, the defendant ordered three Latin Kings members to murder the victim, Juan Cruz Santiago, another Job Corps participant and Latin Kings member. Although the victim was believed to be homosexual and the Latin Kings code prohibited the admission of homosexuals into its membership, the previous president had recruited the victim because he worked in the office of a Job Corps administrator and had access to her files. Immediately prior to his murder, the victim had refused to kill the administrator, despite being ordered to do so by the defendant. When the victim failed to perform that "mission," the defendant announced at a meeting of the gang at which the victim was not present that the victim would have to be killed. The defendant later ordered three gang members, Miguel "Cartoon" Lozada, Heriberto "Peachy" Hernandez, and Jose Robles, to persuade the victim to leave the Job Corps campus with them, and then to kill him. The defendant gave them a knife with which to accomplish this mission, and told them to bring him the victim's eye on their return to prove that they had done as ordered.

On the afternoon of January 30, 1994, Lozada, Hernandez, and Robles carried out their "mission" by beating and strangling the victim in a wooded area not far from the Job Corps campus and throwing him, still breathing but unconscious, into the Connecticut River. They then reported the murder to the defendant. Referring to the victim, the defendant told an assembly of Latin

Kings, "May this be an example to all of you of what could happen to you if you gather against me or don't carry out missions."

The police recovered the victim's body from the river, but did not investigate his death until two years later when Efrain "Frankie" Torres, another Latin Kings member at the Job Corps, gave a series of statements to the police, beginning with one in which he suggested that they look more closely at the victim's death. After obtaining statements from Lozada, Hernandez, and Robles, the police arrested the defendant on April 4, 1996.

The three killers, Lozada, Hernandez, and Robles, each testified, pursuant to plea bargain agreements with the Commonwealth, that he had participated in the victim's murder and that the defendant had ordered the killing. Torres testified, pursuant to an arrangement with the United States Attorney, that he was present when the defendant ordered the killing. Borge and Virgilio Figueroa, brothers who were Latin Kings members in Springfield, testified, pursuant to arrangements with the United States, that while they were housed in Hampden County jail with the defendant in early 1997, he confessed to ordering the three men to kill someone for having failed to carry out a mission to "terminate" a "teacher" at the Job Corps.

1. *Witnesses' obligation to testify truthfully.* The prosecutor elicited from the six key prosecution witnesses that they had agreed to give truthful testimony in return for being allowed to plead guilty to murder in the second degree (Lozada, Hernandez, and Robles) or for consideration in sentencing in pending Federal cases (Torres and the Figueroa brothers). The defendant asserts that the admission of the obligation to testify truthfully as part of the direct, rather than redirect, examinations of certain of these witnesses violates our holding in *Commonwealth* v. *Ciampa*, 406 Mass. 257 (1989), and improperly suggested to the jury that the prosecutor was in a position to vouch for the truth of their testimony. He further argues that in her closing argument the prosecutor improperly vouched for the veracity of the witnesses who testified pursuant to agreements.

We describe first the circumstances in which the challenged testimony was elicited. In their opening statements both the prosecutor and defense counsel indicated to the jury that the credibility of the witnesses testifying under agreements with the Commonwealth or the United States would be central to their case. It was accordingly clear from the outset that, because of

the agreements, the defendant would challenge the witnesses' credibility on cross-examination. See *Commonwealth* v. *Ciampa, supra* at 264. During the prosecutor's direct examination of Lozada, Hernandez, and Torres, each testified about his obligation to testify truthfully.[1] Defense counsel did not object to the questions which garnered these responses, nor did he move to strike the responses. Defense counsel did, however, cross-examine each of the three witnesses at length regarding his expectations and hopes pursuant to his agreement or discussions with the government. Following the redirect examination of the first of these witnesses, Lozada, the judge carefully instructed the jury, at the defendant's request, that with respect to "any so-called promise to tell the truth as a condition of [a] plea agreement," the prosecutor did not "have either the responsibility or the duty under the law or the ability to determine what the truth is."

On direct examination of Borge Figueroa, the prosecutor asked him what he understood his obligations to be pursuant to his arrangement with the United States, to which he responded that he was obligated "[t]o tell only the truth." Defense counsel objected to this question. His objection was overruled, but the judge repeated her instruction that the prosecutor would not know whether a witness was testifying truthfully.[2]

Virgilio Figueroa was the last Latin Kings member to testify.

---

[1]The prosecutor elicited from each of these three either that he was obligated under his agreement with the Commonwealth to provide truthful cooperation (Lozada and Hernandez) or that he had been told that his truthful cooperation would be taken into consideration in his sentencing (Torres).

Robles was the last of the three confessed killers to testify. During her direct examination the prosecutor did not question him about his plea agreement with the Commonwealth. The defendant objected when the prosecutor asked him on redirect examination, "What did I tell you to do when you testified?" His objection was overruled, and Robles answered, "To testify truthfully." The defendant makes no claim that this ruling was erroneous.

[2]At this juncture, the judge again instructed the jury regarding plea agreements, stating:

> "[W]ith respect to any of these statements about, 'My obligation is to tell the truth-provided I tell the truth,' the prosecutors do not decide who's telling the truth. . . . The jury decides who's telling the truth and you . . . always must remember that whenever anyone testifies, 'I'm doing this because I promised to tell the truth to the prosecutors.' Prosecutors don't decide what the truth is in this case."

In her direct examination of Virgilio Figueroa, after the witness testified that he did not have an arrangement with the United States, the prosecutor entered in evidence, over the defendant's objection, a letter stating that the United States Attorney would consider an "accurate" proffer from the witness in connection with a pending criminal investigation.[3] She did not elicit from him any testimony regarding his obligation to be truthful.

Because the defendant did not object to the testimony of Lozada, Hernandez, and Torres, we determine whether it was erroneous to admit during their direct examinations testimony regarding their obligation to testify truthfully and, if so, whether those admissions created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998). Because the defendant timely objected to the admission of Borge Figueroa's testimony on direct examination regarding his obligation to be truthful, and to the admission of the letter describing Virgilio Figueroa's arrangement with the United States, we consider whether these rulings were erroneous and, if so, whether the errors were prejudicial to the defendant. *Id.*

In *Commonwealth* v. *Ciampa, supra* at 261, we acknowledged that "testimony pursuant to a plea agreement, founded on a promise of truthful cooperation, and the plea agreement itself are admissible." We have also recognized that, when the government has entered into an agreement with a witness that requires truthful testimony of him, there is a risk that a jury might er-

---

[3] The letter, signed by an assistant United States Attorney, Virgilio Figueroa, and his counsel, stated that the government "will consider an accurate and complete proffer from . . . Virgilio Figueroa, in connection with a pending criminal investigation." The defendant did not move to redact any portion of the letter, or object to its unredacted state when entered, and does not raise the question on appeal. We consider the admission of the unredacted letter in light of our earlier holdings, pursuant to our review under G. L. c. 278, § 33E. See *Commonwealth* v. *Ciampa*, 406 Mass. 257, 263 n.6 (1989) ("[t]he better course would be . . . to delete any signature of the prosecutor or other representative of the [government] from the agreement as admitted in evidence"). See also *Commonwealth* v. *Martinez*, 425 Mass. 382, 398 (1997). Here, there was none of the "[r]epeated references to the witness's obligation to tell the truth" we found improper in *Ciampa, supra*. The jury in this case, unlike the *Ciampa* jury, were explicitly instructed three times regarding the government's inability to know whether a witness testified truthfully, and thus were adequately put "in a position to evaluate the impact of the plea agreement and testimony presented pursuant to it." *Id.* at 264. We see no substantial likelihood of a miscarriage of justice created by the admission of the unredacted letter.

roneously conclude that the government has a special ability to determine whether or not the witness is in fact telling the truth when he testifies. See *Commonwealth* v. *Dixon,* 425 Mass. 223, 233 (1997). While a prosecutor remains free to argue that a witness who testifies in exchange for favorable treatment by the government is credible, she may not "explicitly or implicitly" vouch to the jury that she knows the witness's testimony is true. *Commonwealth* v. *Ciampa, supra* at 265. Repeated, pointed references in testimony to a witness's obligation to testify truthfully under such an agreement "may impair a jury's ability to assess the witness's credibility, because the jurors may believe that, due to 'the agreement's truthfulness requirement, the Commonwealth knows or can discover whether the witness is telling the truth.' " *Commonwealth* v. *Colon,* 408 Mass. 419, 445 (1990), quoting *Commonwealth* v. *Ciampa, supra* at 260, citing *United States* v. *Wallace,* 848 F.2d 1464, 1474 (9th Cir. 1988).

On direct examination the prosecution may, of course, properly bring out the fact that the witness has entered into a plea agreement and that the witness generally understands his obligations under it. *Commonwealth* v. *Ciampa, supra* at 264, and cases cited. See *Commonwealth* v. *Martinez,* 425 Mass. 382, 398 (1997). Nevertheless, to avoid the appearance of vouching by the prosecutor, "[a]ny attempt at bolstering the witness by questions concerning his obligation to tell the truth should await redirect examination," *Commonwealth* v. *Ciampa, supra* at 264, assuming that on cross-examination the defendant has attacked the witness's credibility based on his incentive to testify in a manner helpful to the government's case.

The Commonwealth argues that our holding in *Ciampa* regarding the timing of questions about a witness's obligation to testify truthfully pursuant to an agreement is an "advisory, rather than obligatory, suggestion." It suggests that, because the prosecutor was on notice that the defendant would attack the credibility of the Latin Kings members called by the Commonwealth, it was permissible to elicit their obligation to testify truthfully on direct examination. Although a prosecutor may pose general questions establishing that a witness knows and understands his obligations pursuant to his agreement on direct examination, she must reserve questions intended to elicit the actual nature of those obligations, specifically the obligation to testify truthfully, until the defendant has attacked the witness's credibility on cross-examination on the ground that his

testimony is pursuant to agreement. See *Commonwealth* v. *Ciampa, supra.* The prosecutor should not have questioned these witnesses on direct examination about their respective obligations.

As to Lozada, Hernandez, and Torres, the admission of their testimony during direct examination did not create a substantial likelihood of a miscarriage of justice. The prosecutor questioned each witness generally about his agreement with the government, but did not dwell on its truthfulness aspect once elicited. There was no excessive repetition of the questions regarding the obligation to testify truthfully, nor was there any particular attempt to focus the attention of the jury on that aspect of the agreements. See *id.* at 264. Defense counsel was clearly aware of our holding in *Commonwealth* v. *Ciampa, supra,*[4] and we are constrained to conclude that his decision not to object was informed by a view that the limited testimony was not unduly harmful. The judge was also acutely aware of the potential for any improper vouching by the prosecution. She twice instructed the jury that the prosecutor did not know what "the truth" was and that it was the duty of the jury alone to make that determination.[5] The judge repeated this admonition in her final instructions, and added a credibility instruction regarding testimony given in expectation of reward in her charge to the jury.

As to the admission of Borge Figueroa's testimony on direct examination over the defendant's objection, we conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Commonwealth* v.

---

[4]Prior to trial, the defendant moved, pursuant to *Commonwealth* v. *Ciampa, supra,* for the redaction of a paragraph describing the obligation to be truthful from a letter describing Borge Figueroa's agreement with the United States. The defendant's motion was denied, but the letter was never admitted in evidence.

[5]After the prosecutor's redirect examination of Lozada, the first of the killers to testify, at the request of defense counsel the judge instructed the jury:

> "[A]ny so-called promise to tell the truth as a condition of [a] plea agreement . . . you determine what the truth is in the case based on the evidence. . . . [T]he prosecution does not have either the responsibility or the duty under the law or the ability to determine what the truth is. So please keep that in mind when you consider any . . . 'promise to tell the truth' under a plea agreement."

*Flebotte,* 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983). Prior to the prosecutor's direct examination of Borge Figueroa, the prosecutor had elicited from Lozada, Hernandez, Robles, and Torres that each was obligated to testify truthfully pursuant to his agreement with the government. The defendant had cross-examined each of those witnesses vigorously regarding his expectations under his agreement. That Borge Figueroa had a similar obligation would have been an obvious inference for the jury to make, and one that would have been confirmed when the prosecutor brought it out on redirect. It is not plausible that the defendant would not have challenged his credibility on cross-examination, given his trial strategy. Again, the prosecutor did not dwell on this aspect of his testimony, and the jury were, by then, well aware of the import of the agreements.

The defendant also objected to the admission on direct examination of Virgilio Figueroa's written plea agreement. The timing of the admission of a plea agreement in evidence is in the judge's discretion where, as here, it is clear that the defendant will challenge the witness's credibility on cross-examination. *Commonwealth* v. *Ciampa, supra* at 264. Given the defendant's attack on the credibility of Borge and Virgilio Figueroa in his opening argument, and that he had by that point in the trial cross-examined the preceding five witnesses testifying pursuant to agreements regarding their incentives, it was abundantly clear that the defendant would challenge Virgilio Figueroa's credibility on cross-examination. The admission of the written plea agreement on direct examination was an appropriate exercise of the judge's discretion. There was no error.

The defendant makes a separate argument pursuant to *Commonwealth* v. *Ciampa, supra,* that in her closing argument the prosecutor improperly vouched for the truth of the testimony of the witnesses. A prosecutor may not suggest to the jury that she has evidence of the witnesses' veracity that is not before the jury. *Commonwealth* v. *Ciampa, supra* at 265. A prosecutor may, however, "restate the government's agreement with the witness and may argue reasonable inferences from the plea agreement's requirement of truthful testimony." *Id.* The defendant points to certain statements in the prosecutor's argument in which she mentions the plea agreements of key wit-

nesses and describes the Commonwealth's theory of the case.[6] We have reviewed the prosecutor's entire closing argument, paying attention to those parts specifically challenged by the defendant. We find no instances of impermissible vouching.

2. *Prior consistent statements.* The defendant asserts that certain statements made before trial by Lozada and Hernandez to the police were consistent with their trial testimony, and should not have been admitted. Alternatively, he argues that if the statements were admissible to show that the witnesses' testimony was not recently contrived, the statements should have been accompanied by an appropriate limiting instruction. The defendant neither objected to the admission of the statements nor requested a limiting instruction. We again determine whether the testimony was erroneously admitted, and if so, whether that created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163 (1998).

During her direct examinations of Lozada and Hernandez, the prosecutor elicited from each that he previously had told the police that the defendant had ordered the murder of the victim. In her closing argument, she alluded to these statements and further stated that Robles also had told the police that the defendant had ordered the murder, and implied that Torres had given the police the same information.[7] Each of these four witnesses testified at trial that the defendant had ordered the murder.

As a general matter, a witness's prior statement that is consistent with his testimony at trial is inadmissible. *Commonwealth* v. *Martinez*, 425 Mass. 382, 396-397 (1997). However, if the witness's trial testimony is impeached by a claim of recent contrivance or inducement, a prior statement made before the witness had an incentive to fabricate testimony

---

[6]For example, the defendant challenges this portion of the prosecutor's closing argument:

"Now, [defense counsel], in his closing, talks about witnesses wanting to reduce their sentences. Sure. The Commonwealth has the power to send people to jail, to send them to prison. That man, the defendant, can send them to their death. That man orders people killed and they die. Jose [Robles], Peachy [Hernandez] and Cartoon [Lozada], they killed for him. [The victim] was sent to kill. He was sent to kill [the administrator], but he couldn't kill."

[7]There was no evidence regarding the content of Robles's statement to the police. The only evidence regarding the contents of Torres's statement to the police indicated that he had told them to look into the victim's death. We discuss the issues raised by the prosecutor's closing arguments, *infra.*

may be admitted. Even then, "these statements are admissible only to rebut the claim of recent fabrication, not to prove the truth of the matter." *Id.*, and cases cited. The defendant argues that the exception to the general rule does not apply in this case because Lozada and Hernandez had an incentive to fabricate their testimony when they first spoke to the police, and not at some later time in exchange for lenient treatment. We reject this suggestion. When they made their statements to the police, each confessed to participating in the murder of the victim. They did so even though neither had been promised anything by the government in return for the information. We are unable to conclude that these statements could possibly be viewed as ameliorative at that time. See *id.* at 396, 397, 397-398; *Commonwealth* v. *Sullivan*, 410 Mass. 521, 527 (1991). Trial judges are granted "wide discretion in deciding whether the circumstances warrant the admission of a witness's prior consistent statements when he has been *or will be* impeached with an inconsistent statement" (emphasis supplied). *Commonwealth* v. *Saarela*, 376 Mass. 720, 723 (1978). See *Commonwealth* v. *Zukoski*, 370 Mass. 23, 27 (1976) (trial judge has "range of discretion in determining whether a suggestion of recent contrivance exists in the circumstances"). Defense counsel made plain in his opening statement that he would attack the credibility of the witnesses, and on cross-examination did impeach them with the various stories they told the police when first questioned. See *Commonwealth* v. *Martinez*, *supra* at 397 n.15. Suggesting that the witnesses contrived their accusation against the defendant to minimize their responsibility for their crimes was clearly a method of attack the defendant intended to pursue. There was no abuse of discretion in allowing Lozada and Hernandez to testify regarding the contents of their earlier statements to the police.

The defendant did not request, and the judge did not give, a limiting instruction to inform the jury that they could consider the testimony regarding Lozada's and Hernandez's earlier statements to the police only to determine whether each witness's in-court testimony was recently contrived. See *Commonwealth* v. *Zukoski*, *supra* at 27. While the defendant was entitled, on request, to a limiting instruction, there is no substantial likelihood of a miscarriage of justice because the judge did not give such an instruction sua sponte.

3. *The prosecutor's closing argument.* In her closing argu-

ment, the prosecutor told the jury that the testimony of Lozada, Hernandez, and Robles was credible because, when each was arrested, he "independent[ly]" told the police that the defendant had ordered the killing. She also suggested that Torres had given the same information to the police "independent[ly]." The defendant claims this misrepresents the testimony of both Robles and Torres, because neither testified that he accused the defendant in the statements he gave the police before learning the contents of the statements of the others. The defendant did not object to any portion of the prosecutor's closing argument.

Counsel are entitled to argue reasonable inferences from the evidence, even if those inferences are not inescapable. See *Commonwealth* v. *Dinkins*, 415 Mass. 715, 725 (1993). At most the prosecutor implied, in passing, that Torres had told the police the fact that the victim was murdered, and in what manner.[8] As to Robles, the prosecutor did state that, at the time of his arrest and before he was told of the others' statements, Robles accused the defendant. Robles testified on direct examination that he knew that Lozada had implicated him prior to his confession and accusation of the defendant. However, his testimony on cross-examination contradicted some of that elicited on direct and, although ambiguous, could be understood to indicate that he accused the defendant prior to knowing of the statements of the other killers or of Torres. The prosecutor drew reasonable inferences from the testimony of each witness, from the evidence regarding the police investigation, and from the fact that each later testified. See *Commonwealth* v. *Cosme*, 410 Mass. 746, 750 (1991). The prosecutor's closing argument was not improper. There was no likelihood of a miscarriage of justice. See *Commonwealth* v. *Vinnie, supra.*

4. *General Laws c. 278, § 33E.* The defendant argues that the cumulative effect of the claimed errors requires that we exercise our power under the statute to reverse his conviction. We have considered each of his arguments, and find none meritorious. The defendant makes no other substantive argument supporting his request for relief. We have reviewed the entire record and

---

[8]Defense counsel cross-examined Torres extensively about whether he had given certain details, not including the accusation itself, in earlier or later statements. The inference that Torres had told the police in an early statement that he knew the victim was murdered was not unreasonable.

find nothing that would compel us to exercise our discretion to disturb the jury's verdict.

*Judgment affirmed.*

Justice Fried participated in the deliberation on this case, but resigned before the opinion was issued.